[No. G039923. Fourth Dist., Div. Three. Jan. 28, 2009.]

TED E. CHRISTENSEN et al., Plaintiffs and Appellants, v.
WILLIAM W. SMITH, JR., Defendant and Respondent.

[No. G040103. Fourth Dist., Div. Three. Jan. 28, 2009.]

WILLIAM W. SMITH, JR., Plaintiff and Respondent, v.
TED E. CHRISTENSEN et al., Defendants and Appellants.

## COUNSEL

Gerald N. Shelley for Plaintiffs and Appellants and for Defendants and Appellants.

Prenovost, Normandin, Bergh & Dawe and Michael G. Dawe for Defendant and Respondent and for Plaintiff and Respondent.

## OPINION

**ARONSON, J.**—Ted E. Christensen and his wife, Eve L. Christensen, appeal from a judgment denying their petition to vacate or correct an arbitration award in favor of William W. Smith, Jr., and granting Smith's petition to confirm the award. The Christensens contend the arbitrator made errors of law that are reviewable on appeal and that the trial court erred by failing to vacate the award because the arbitrator was biased. In the published portion of this opinion, we conclude the terms of the parties' arbitration agreement do not provide for appellate review of legal errors a party later claims the arbitrator made. In the unpublished portion of the opinion, we explain the Christensens' bias contention is without merit. We therefore affirm the judgment.

### I

### FACTUAL AND PROCEDURAL BACKGROUND

Smith bought the Christensens' home on Harbor Island in Newport Beach in November 2004 for $8,350,000. After Smith moved in, he received a letter from the city informing him the home's second dock, apparently running along the property line, actually belonged to his neighbor and would be torn down. The parties submitted the issue of whether the Christensens failed to disclose to Smith the true ownership of the dock to binding arbitration. Michael Dawe represented Smith, and James Bohm represented the Christensens.

The arbitrator found the Christensens' real estate agent marketed the property as having two boat docks.[1] The arbitrator concluded the Christensens failed to disclose a material fact when they did not alert Smith the neighbor had a unilateral right to relocate the dock solely within his property lines. In a

---

[1] Smith had his own agent, but both agents worked for the same company, Prudential Realty, so the parties executed dual agency waivers in the real estate sales contract.

tentative decision on April 4, 2007, the arbitrator awarded Smith, based on expert testimony, $543,451 as the value of the dock.

Earlier, on March 12, 2007, Dawe, Bohm, and the arbitrator had separately attended a St. Patrick's Day party hosted by Aitken, Aitken & Cohn at Muldoon's Irish Pub in Newport Beach. According to Dawe's declaration, the arbitrator greeted him in the entryway and remarked he had just " 'bumped into . . . your opposing counsel in the arbitration hearing,' " which had concluded on March 9th. The arbitrator proceeded to mingle with others at the gathering. Within moments, Bohm entered, exchanged cordial greetings with Dawe, and the pair parted amicably after Dawe commented on the " 'small world' irony of the three of us happening to be in the same spot . . . so soon after having spent the last two business days arbitrating our hotly contested matter."

After the arbitrator released his tentative decision on April 4th, Bohm e-mailed Dawe on April 11th with "concerns" that the arbitrator was biased. Bohm stated: "My concerns were initially aroused when I went to Wylie Aitken's St. Patrick's Day party and saw you having drinks with [the arbitrator] in a small huddle of people. You were approximately one inch from the Judge. That event was one business day after the matter was submitted to the judge for binding determination. After seeing that I made some inquiries and I have been advised that you are both in the Celtic Bar Association and regularly attend meetings together at Muldoon's in Newport Beach." Based on their membership in the Celtic Bar Association of Orange County, including the fact that Dawe and the arbitrator had both attended an MCLE (minimum continuing legal education) trip to Scotland in 2006 sponsored by that bar, Bohm "conclude[d] that we did not have a fair and impartial arbitrator."

On April 17th, Bohm filed a motion with the arbitrator requesting that he vacate his tentative opinion and recuse himself from the matter to avoid the appearance of bias. Dawe filed a declaration stating he had attended only "six or seven" Celtic Bar Association meetings over several years and that, "[w]hile I may have seen [the arbitrator] at one or more of the . . . meetings, I have absolutely no recollection of having done so, or having ever spoken with him at any such meetings." Dawe believed he had mentioned the Scotland trip in a telephonic conference with Bohm and the arbitrator during the arbitration while they waited several minutes for a witness to come on the line.

In any event, Dawe did not believe the arbitrator would have any reason to remember him being on the 10-day trip, which included 65 other attendees, because Dawe only spoke to him once. "My wife and I were admiring the

extraordinary sight of a herd of shaggy long haired cows standing in knee-deep mud in a pasture behind Culloden House when [the arbitrator, the arbitrator's wife], attorney Jaime Duarte, and two individuals whose names I do not presently know, approached us. Like my wife and I, they appeared to be walking the grounds and taking in the scenery. We spent a few light moments exchanging comments, primarily about the cows, and went on our separate ways. Other than that I have no recollection whatsoever of having any direct social contact with [the arbitrator] either on the Scotland trip, or at any other time, ever."

Dawe had one other incidental contact involving the arbitrator on the trip, "while waiting at an airport." He "had just finished reading a paperback book on the demise of E[nron]. I approached a group of six or seven people who were also sitting in the waiting room at the airport and offered the paperback book to anyone in the group who might be interested [in it] for reading on the aircraft. [The arbitrator's wife] indicated that she might find the book interesting and I gave it to her. That exchange might have taken a total of two minutes."

The arbitrator declined to vacate his tentative award or recuse himself, and instead issued a final award in July 2007.[2] The Christensens now appeal the trial court's judgment confirming the award rather than vacating it.

II

DISCUSSION

A.  *The Arbitration Award Is Not Appealable for Legal Error*

█  The Christensens assert the arbitration award may be appealed to review the award for legal error. Specifically, the Christensens contend the arbitrator erred in awarding Smith $543,451 for the absence of a second dock. They argue the amount constitutes a mistake of law because, according to the Christensens, the arbitrator found the market value of the property was what Smith paid for it, and therefore he suffered no damages.[3] The Christensens also argue the arbitrator failed to impute to Smith under dual agency law knowledge the Christensens' real estate agent may have had concerning the suspect

---

[2] Smith requests that we take judicial notice of the Christensens' attempt to preempt the arbitrator's final ruling by seeking an injunction and declaratory relief from the trial court. But the issue has no bearing on our resolution of the appeal, and we therefore deny Smith's motion.

[3] According to Smith, however, the arbitrator found the purchase price, $8,350,000, was the market value of the property with two docks, not one.

future of the second dock.[4] The Christensens' legal claims are unreviewable. Generally, "[i]n an arbitration, 'the parties do not get to appeal an adverse decision.' " (*Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 167 [35 Cal.Rptr.3d 745].)

■ Relying on *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334 [82 Cal.Rptr.3d 229, 190 P.3d 586] (*DirecTV*), the Christensens contend an exception applies to the general rule precluding review for legal error. In *DirecTV*, our Supreme Court explained that "while the statutory grounds for correction and vacation of arbitration awards do not ordinarily include errors of law, contractual limitations on the arbitrators' powers can alter the usual scope of review." (*Id.* at p. 1356; see Code Civ. Proc., §§ 1286.2, subd. (a)(4), 1286.6, subd. (b) [statutes governing judicial review to correct or vacate award include ground that "[t]he arbitrators exceeded their powers . . .".].) The Supreme Court held in *DirecTV* that an "expanded scope of review *would* be available under a clause specifically tailored for that purpose." (*DirecTV*, at p. 1345.) But "to take themselves out of the general rule that the merits of the award are not subject to judicial review, the parties must clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts." (*Id.* at p. 1361.)

In *DirecTV*, the parties' arbitration clause stated: " 'The arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.' " (*DirecTV, supra,* 44 Cal.4th at p. 1361, fn. 20.) The Supreme Court concluded the first clause of this formulation "deprive[ed] the arbitrators of the power to commit legal error" and the second clause "specifically provided for judicial review of such error." (*Id.* at p. 1361.) The court did not decide "whether one or the other of these clauses alone, or some different formulation, would be sufficient to confer an expanded scope of review," but "emphasize[d] that parties seeking to allow judicial review of the merits, and to avoid an additional dispute over the scope of review, would be well advised to provide for that review explicitly and unambiguously." (*Ibid.*)

■ Here, the parties' arbitration agreement provides that "[t]he arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate law experience, unless the parties mutually agree to a

---

[4] The Christensens assume the arbitrator found the agent's testimony credible. (But see *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193] [judgments below are " 'presumed correct' " (italics omitted) and " 'All intendments and presumptions are indulged to support it . . .' "]; see also *Pescosolido v. Smith* (1983) 142 Cal.App.3d 964, 970–971 [191 Cal.Rptr. 415] ["The trier of fact . . . is the sole arbiter of all conflicts in the evidence, conflicting interpretations thereof, and conflicting inferences which reasonably may be drawn therefrom; it is the sole judge of the credibility of the witnesses [and] may disbelieve them even though they are uncontradicted . . .".].)

different arbitrator, *who shall render an award in accordance with substantive California Law.*" (Italics added.) This language provides no hint the parties contemplated appellate review of the merits. True, the final clause specifies "substantive California Law" is to govern the arbitration, but the language and its context, a standard form real estate contract, suggest a routine identification of forum law. Absent extrinsic evidence introduced below, and there was none here, we review the terms of an arbitration agreement de novo. (*Metalclad Corp. v. Ventana Environmental Organization Partnership* (2003) 109 Cal.App.4th 1705, 1716 [1 Cal.Rptr.3d 328].) Whether the terms of a contract are ambiguous is a question of law. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554].) We discern no ambiguity in the agreement. The language here, appended in a trailing clause, simply does not convey that the parties resolved to contravene the "general rule" of arbitral finality (*DirecTV, supra,* 44 Cal.4th at p. 1361) by subjecting each other to the time and expense of further court proceedings and the arbitrator to appellate policing.

■ Unlike the arbitration agreement in *DirecTV*, the terms here do not expressly deprive the arbitrator of the power to commit legal error. As the Supreme Court observed in *DirecTV*, "A provision requiring arbitrators to apply the law leaves open the possibility that they are empowered to apply it 'wrongly as well as rightly.' " (*DirecTV, supra,* 44 Cal.4th at p. 1360.) After all, " ' " '[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.' " [Citation.]' " (*Id.* at p. 1361.) *DirecTV* cautioned parties to "*expressly* provide for an expanded scope of review" to distinguish their agreement from "the usual expectations of parties to arbitration agreements, who accept the risk of legal error in exchange for the benefits of a quick, inexpensive, and conclusive resolution." (*Id.* at p. 1360.) Because the parties did not do so, there is no basis for the expanded appellate review the Christensens now seek.

■ Additional language from the arbitration agreement provides an independent ground for our conclusion. The arbitration agreement specifies: "Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act" (FAA). The FAA, unlike the California Arbitration Act (CAA) as construed in *DirecTV*, does not permit parties to contract for judicial review for legal error. Accordingly, we do not interpret the agreement to mean the parties intended the expanded review the Christensens now advocate. (See *Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576, ___ [170 L.Ed.2d 254, 128 S.Ct. 1396, 1405] ["Instead of fighting the text, it makes more sense to see the [FAA's] three provisions, §§ 9–11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to

a more cumbersome and time-consuming judicial review process . . .' "]; see also *DirecTV, supra,* 44 Cal.4th at pp. 1352–1354, 1350, fn. 12 [distinguishing CAA from FAA in contract where latter governed arbitral procedures but not review].) Consequently, the Christensens' request that we review the award for legal error is without merit.

B. *The Trial Court Did Not Err in Declining to Vacate the Award for Bias**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

## DISPOSITION

The judgment is affirmed. Respondent is entitled to his costs on appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.

On February 27, 2009, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied April 29, 2009, S171053.

---

*See footnote, *ante*, page 931.