[No. B216373. Second Dist., Div. One. Feb. 26, 2010.]

KENNY GRAVILLIS, JR., Plaintiff and Respondent, v.
COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY et al.,
Defendants and Appellants.

### COUNSEL

Robert J. Shulkin; Gemmill, Baldridge & Yguico and Carlos V. Yguico for Defendants and Appellants.

James S. Link; Law Offices of Robin L. Haulman, Robin L. Haulman; Law Offices of Diane Corwin and Diane Corwin for Plaintiff and Respondent.

### OPINION

**MALLANO, P. J.**—Plaintiff bought a home using a standard form California purchase agreement requiring the arbitration of disputes arising out of the agreement. Before plaintiff moved into the home, he learned that extensive structural damage had rendered it uninhabitable.

Plaintiff filed this action against his brokers for failing to disclose the structural damage. The brokers moved to compel arbitration. After an interim appeal, the motion was granted.

The arbitrator found in plaintiff's favor and awarded him damages and costs. Plaintiff petitioned to confirm the award. The brokers petitioned to vacate it. The trial court confirmed the award and entered judgment accordingly.

On appeal, the brokers contend that the arbitrator made several errors of law and that the parties' arbitration agreement provides for an expanded scope of judicial review. More specifically, the brokers argue that the arbitrator's errors of law are subject to review on the merits because the arbitration agreement requires the arbitrator to render an award in accordance with California substantive law. We conclude that, because the arbitration agreement does not explicitly and unambiguously provide for an expanded

scope of review, the trial court properly declined to review the award on the merits. We therefore affirm.

# I

# BACKGROUND

The allegations and facts in this case are taken from the complaint, the motion to compel arbitration, and the respective petitions to confirm and vacate the arbitration award.

## A. *Complaint*

The complaint alleged as follows. Plaintiff Kenny Gravillis, Jr., entered into a "Residential Purchase Agreement" (Agreement) to buy a home in Los Angeles, California. His brokers were defendants Coldwell Banker Residential Brokerage Company (Coldwell Banker Brokerage) and two of its employees, Karen Kennedy and Scott Krile. (We sometimes refer to Coldwell Banker Brokerage and its two employees collectively as Brokers.)

The Brokers failed to disclose "known material facts and defects" about the residence, including (1) termite infestation that rendered the home uninhabitable, (2) earthquake damage that made the home structurally unsound, (3) water intrusion damage, and (4) cosmetic repairs that concealed the structural damage. The Brokers failed to discuss the results of a termite inspection report that would have disclosed, or put Gravillis on notice of, the damage. And the Brokers were negligent in recommending the company that conducted the termite inspection. If the Brokers had made the proper disclosures, Gravillis would not have purchased the home.

The complaint asserted four causes of action against the Brokers: breach of fiduciary duty, negligence, breach of the duty to be honest and truthful, and violation of the California unfair competition law (UCL) (Bus. & Prof. Code, §§ 17200–17210). The first three claims were premised on the Brokers' alleged failure to disclose material facts about the condition of the property. The UCL claim alleged that the Brokers engaged in a practice of choosing home inspectors and pest control companies that would minimize the disclosure of property defects in exchange for future business.

As a proximate result of the various nondisclosures, Gravillis suffered severe emotional distress, pain and suffering, property damage, damage to credit, moving expenses, the cost of alternative living arrangements, lost wages, repair costs, and investigative costs.

## B. *Motion to Compel Arbitration*

Relying on the arbitration provision in the Agreement, the Brokers filed a motion to compel arbitration and to stay the action pending the outcome of arbitration. The Agreement, a preprinted form prepared by the California Association of Realtors, is, according to the association, the most frequently used form in California for the sale of residential real estate. (See *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 768 [49 Cal.Rptr.3d 531] (*Gravillis I*).)

The Agreement indicated that Gravillis was buying the property for $500,000, of which $485,000 would be financed through a 30-year mortgage with a fixed rate of 8.5 percent. Under the Agreement, the seller was obligated to pay for a pest control report to be prepared by a registered structural pest control company of the seller's choosing. The seller was also required to "disclose known material facts and defects" in the property. The property would be sold "in its PRESENT physical condition . . . subject to Buyer Inspection rights." The buyer had "the right to inspect the Property and, based upon [the] information discovered in those Inspections, [to] reasonably request that Seller make Repairs, corrections or take other action." The Agreement permitted the buyer to "inspect for wood destroying pests and organisms." It also stated, "Note to Buyer: You are strongly advised to conduct Inspections of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important." The Agreement set forth in detail the seller's rights and obligations in making repairs and the deadlines for requesting and agreeing that repairs would be made.

The Agreement named Coldwell Banker Brokerage and its two employees as the brokers for Gravillis and listed Prudential California Realty as the broker for the seller. It also stated, "If Brokers give Buyer or Seller referrals to persons, vendors, or service or product providers . . . , Brokers do not guarantee the performance of any of those Providers."

The Agreement's arbitration provision stated in part: "***ARBITRATION OF DISPUTES***: . . . Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction . . . shall be decided by neutral, binding arbitration . . . [subject to the exclusions noted below]. *The arbitrator . . . shall render an award in accordance with substantive California Law.* In all other respects, the arbitration shall be conducted in accordance with Part III, Title 9 of the California Code of Civil Procedure. . . . [¶] . . . [¶] . . . Buyer and Seller agree to . . . arbitrate disputes or claims involving either or both Brokers." However,

"[a]ny election by either or both Brokers to participate in . . . arbitration shall not result in Brokers being deemed parties to the Agreement." (Italics & boldface added.)

The Agreement excluded from arbitration "an action for *bodily injury* or wrongful death." (Italics added.) It also excluded "any right of action to which Code of Civil Procedure § 337.1 or § 337.15 applies," namely, actions involving construction defects.

The arbitration provision further provided: "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITI-GATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW *YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO* DISCOV-ERY AND *APPEAL*, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE *'ARBITRATION OF DISPUTES' PROVISION*. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UN-DER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCE-DURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION." (Italics and boldface added.) Gravillis initialed the space for the buyer. The seller also initialed the appropriate space.

In moving to compel arbitration, the Brokers argued that the Agreement was "a contract evidencing a transaction involving commerce" (9 U.S.C. § 2), and arbitration was therefore required under the Federal Arbitration Act (FAA) (9 U.S.C. §§ 1–16). The Brokers requested a stay of the action pending the outcome of arbitration.

In his opposition papers, Gravillis argued that arbitration was not appropri-ate because he sought damages for bodily injury, that is, emotional distress. He also asserted that the FAA was not applicable because the Agreement did not involve interstate commerce and that, instead, the dispute was governed by the California Arbitration Act (CAA) (Code Civ. Proc., §§ 1280–1294.2; all further statutory references are to that code unless otherwise indicated).

At a hearing on September 28, 2004, the trial court, Judge Rodney E. Nelson presiding, *denied* the motion to compel, finding that the bodily injury

exclusion applied. The Brokers requested a statement of decision. (See § 1291.) Counsel for Gravillis agreed to draft one. By minute order filed the day of the hearing, the trial court denied the motion.

Gravillis lodged a proposed order and statement of decision. The Brokers filed objections, which repeated some of their arguments as to why the motion to compel should have been granted. Gravillis filed a one-page reply accusing the Brokers of "trying to get a 'second bite at the apple.' " On January 18, 2005, the trial court issued an order stating, "Upon reading the material submitted by [the Brokers], the Court *orders this matter to arbitration.*" (Italics added.) The court vacated the dates for the final status conference and the trial.

In response, Gravillis filed a motion for reconsideration based on "new circumstances." (See § 1008, subd. (a).) The Brokers filed opposition papers. The motion was argued on March 3, 2005. The trial court announced at the hearing that it was granting reconsideration and *denying* the motion to compel arbitration. On March 7, 2005, the trial court issued an order and statement of decision, explaining: "This case should be tried rather than arbitrated. Actions for bodily injury . . . , which we have here, are excluded from arbitration." The Brokers appealed.

On September 29, 2006, we reversed the trial court, concluding that the bodily injury exclusion did not apply because emotional distress is not a bodily injury within the meaning of the Agreement. (*Gravillis I, supra,* 143 Cal.App.4th at pp. 778–780.)

On remand, the trial court, Judge Paul Gutman presiding, ordered that the matter be arbitrated.

The arbitration was conducted by a single arbitrator, retired Judge Enrique Romero, under the auspices of ADR Services, Inc. (ADR Services). The hearing was conducted December 8 through 12, 2008, and December 15 and 16, 2008. On March 24, 2009, the arbitrator issued a "Second Corrected Final Binding Arbitration Award" in favor of Gravillis, awarding him $347,671 in damages and $47,076.35 in arbitral costs, for a total of $394,747.35.

C. *Postarbitration Petitions*

Gravillis filed a petition to confirm the award. (See § 1285.) The Brokers filed a petition to vacate the award, arguing that the arbitrator had committed several errors of law and that the arbitration provision required the trial court to apply an expanded scope of review in examining the award. (See §§ 1286.2, subd. (a)(4), 1286.4.)

On May 11, 2009, the trial court, Judge Amy D. Hogue presiding, granted the petition to confirm, denied the petition to vacate, and entered judgment in favor of Gravillis. The Brokers appealed.

## II

## DISCUSSION

We review de novo the trial court's order confirming the arbitration award. (See *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 [36 Cal.Rptr.2d 581, 885 P.2d 994]; *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1056 [9 Cal.Rptr.3d 286].) This appeal requires us to determine the scope of review the trial court should have applied in ruling on the Brokers' petition to vacate the award. We conclude that the arbitration provision did not require the trial court to review any errors of law on the merits because the parties did not explicitly and unambiguously agree to an expanded scope of review.

Under the CAA, "the [trial] court shall vacate the award if the court determines any of the following: [¶] (1) The award was procured by corruption, fraud or other undue means. [¶] (2) There was corruption in any of the arbitrators. [¶] (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (4) *The arbitrators exceeded their powers* and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶] (6) An arbitrator making the award [was subject to disqualification]." (§ 1286.2, subd. (a)(1)–(6), italics added.)

An arbitrator's errors generally do not contravene the "exceeded powers" clause of the CAA. Under section 1286.2, subdivision (a)(4), an arbitrator exceeds his powers by acting without subject matter jurisdiction, deciding an issue that was not submitted to arbitration, arbitrarily remaking the contract, upholding an illegal contract, issuing an award that violates a well-defined public policy or a statutory right, fashioning a remedy that is not rationally related to the contract, or selecting a remedy not authorized by law. (See *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 [123 Cal.Rptr.2d 122]; see also *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 31–33 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*) [discussing application of § 1286.2, subd. (a)(4), to illegal contracts]; *Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 889–893 [64 Cal.Rptr.2d 484] [same].)

The Brokers contend that the trial court should have vacated the award because the arbitrator misinterpreted California substantive law in violation of the Agreement. According to the Brokers, the arbitrator erred by (1) finding they had breached a fiduciary duty, (2) awarding "benefit of the bargain" damages instead of "out of pocket" damages, and (3) awarding arbitral costs to the prevailing party.

With respect to the alleged error concerning the Brokers' fiduciary duty, the arbitrator found: "[The Brokers] did not intentionally conceal the home inspection report and the termite report, both of which were faxed directly to Mr. Gravillis and both of which revealed structural damage to the property and termite infestation. Rather the [Brokers] breached their fiduciary duty by failing to follow up with the [plaintiff] and inquire whether based on the existence of the termite and structural damage, [he] still wanted to proceed with the purchase of the property or whether [he] wanted to further consult the experts who prepared both of the reports, so that [the Brokers] can connect the dots for the [plaintiff]." On the subject of damages, the arbitrator stated: "[T]here is no [California] Supreme Court decision as to the measure of damages for breach of fiduciary duty by the broker/agent. Since there is a split of authority as to the measure of damages for breach of fiduciary duty among the Courts of Appeal, none of the decisions are binding." The arbitrator ultimately decided to apply the benefit-of-the-bargain rule based on the analysis in *Fragale v. Faulkner* (2003) 110 Cal.App.4th 229, 235–238 [1 Cal.Rptr.3d 616], and *Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 563–568 [29 Cal.Rptr.2d 463]. Finally, the arbitrator awarded arbitral costs to Gravillis pursuant to the rules promulgated by ADR Services.

■ Our analysis begins with *Moncharsh, supra*, 3 Cal.4th 1. There, the arbitration provision stated: " 'Any dispute arising out of this Agreement shall be subject to arbitration under the rules of the American Arbitration Association. No arbitrator shall have any power to alter, amend, modify or change any of the terms of this agreement. The decision of the arbitrator shall be final and binding on [the parties].' " (*Id.* at p. 7, fn. 1.) In light of that provision, *Moncharsh* held "an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Id.* at p. 6.)

In *Moncharsh, supra*, 3 Cal.4th 1, the court explained its holding at length: "[The CAA], as enacted and periodically amended by the Legislature, represents a comprehensive statutory scheme regulating private arbitration in this state. (§ 1280 et seq.) Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' . . . [C]ourts

will ' "indulge every intendment to give effect to such proceedings." ' . . . 'The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' . . . 'Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts.' . . .

■ "The arbitration clause included in the . . . agreement in this case specifically states that the arbitrator's decision would be both binding and final. The parties to this action thus clearly intended the arbitrator's decision would be final. Even had there been no such expression of intent, however, it is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final. . . . 'The very essence of the term "arbitration" [in this context] connotes a binding award.' . . . 'Even in the absence of an explicit agreement, conclusiveness is expected; the essence of the arbitration process is that an arbitral award shall put the dispute to rest.' . . . 'The parties [to an arbitration] can take a measure of comfort in knowing that the arbitrator's award will almost certainly mean an end to the dispute.' . . .

"This expectation of finality strongly informs the parties' choice of an arbitral forum over a judicial one. The arbitrator's decision should be the end, not the beginning, of the dispute. . . . Expanding the availability of judicial review of such decisions 'would tend to deprive the parties to the arbitration agreement of the very advantages the process is intended to produce.' . . .

"Ensuring arbitral finality thus requires that judicial intervention in the arbitration process be minimized. . . . Because the decision to arbitrate grievances *evinces the parties' intent* to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration. Thus, an arbitration decision is final and conclusive *because the parties have agreed that it be so*. By ensuring that an arbitrator's decision is final and binding, courts simply assure that the *parties receive the benefit of their bargain*.

"Moreover, '[a]rbitrators, *unless specifically required to act in conformity with rules of law*, may base their decision upon *broad principles of justice and equity*, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' . . . 'The arbitrators are not bound to award on principles of dry law, but may decide on principles of equity and good conscience, and make their award *ex aequo et bono* [according to what is just and good].' . . . '*As a consequence, arbitration awards are generally immune from judicial review.* "Parties who

stipulate in an agreement that controversies that may arise out of it shall be settled by arbitration, may expect not only to reap the advantages that flow from the use of that nontechnical, summary procedure, but also to find themselves bound by *an award reached by paths neither marked nor traceable and not subject to judicial review*." ...' ...

"Thus, *both* because it vindicates the *intentions of the parties* that the award be final, *and* because an arbitrator is not ordinarily constrained to decide *according to the rule of law*, it is the general rule that, '*The merits of the controversy between the parties are not subject to judicial review*.' ... More specifically, courts will not review the validity of the arbitrator's reasoning. ...

". . . [I]t is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law. In reaffirming this general rule, we recognize there is a risk that the arbitrator will make a mistake. That risk, however, is acceptable for two reasons. First, by *voluntarily* submitting to arbitration, the parties have agreed to bear that risk in return for a quick, inexpensive, and conclusive resolution to their dispute. ... '[T]he parties to an arbitral agreement knowingly take the risks of error of fact or law committed by the arbitrators and that this is a worthy "trade-off" in order to obtain speedy decisions by experts in the field whose practical experience and worldly reasoning will be accepted as correct by other experts.' ... 'In other words, it is within the power of the arbitrator to make a mistake either legally or factually. When parties opt for the forum of arbitration they agree to be bound by the decision of that forum knowing that arbitrators, like judges, are fallible.' ... [¶] ... [¶]

"A second reason why we tolerate the risk of an erroneous decision is because the Legislature has reduced the risk to the parties of such a decision by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process. ... [¶] ... [¶] The Legislature has . . . substantially reduced the possibility of certain forms of error infecting the arbitration process itself (§ 1286.2, [subd. (a)(1)–(3)]), of an arbitrator exceeding the scope of his or her arbitral powers (§§ 1286.2, subd. [(a)(4)], 1286.6, subd. (b)), of some obvious and easily correctable mistake in the award (§ 1286.6, subd. (a)), of one party being unfairly deprived of a fair opportunity to present his or her side of the dispute (§ 1286.2, subd. [(a)(5)]), or of some other technical problem with the award (§ 1286.6, subd. (c)). [Given] these statutory provisions, the residual risk to the parties of an arbitrator's erroneous decision represents an acceptable cost—obtaining the expedience and financial savings that the arbitration process provides—as compared to the judicial process." (*Moncharsh, supra*, 3 Cal.4th at pp. 9–13, some italics added, citations & fns. omitted.)

In *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334 [82 Cal.Rptr.3d 229, 190 P.3d 586] (*DIRECTV*), the court recognized that an arbitration agreement may, if properly worded, require the courts to review an arbitrator's errors of law on the merits. In *DIRECTV*, the arbitration provision stated in part: " *'The arbitrators shall apply California substantive law* to the proceeding, except to the extent Federal substantive law would apply to any claim. . . . The arbitrators shall prepare in writing and provide to the parties an award including factual findings and the reasons on which their decision is based. *The arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.*" (*Id.* at p. 1341, fn. 3, italics added.)

*DIRECTV* distinguished prior case law: "In *Moncharsh*, the parties' arbitration clause included no provision for an expanded scope of judicial review. . . . We considered and rejected the appellant's claim that the award was nevertheless reviewable for error of law on its face causing substantial injustice, a proposition which had some support in case law. . . . We reaffirmed 'the general rule that an arbitrator's decision is not ordinarily reviewable for error by either the trial or appellate courts' . . . , and held that the statutory grounds for review were intended to implement that rule . . . ." (*DIRECTV, supra*, 44 Cal.4th at pp. 1354–1355, citations omitted.)

The *DIRECTV* court continued: "Our reasoning in *Moncharsh* centered not on *statutory* restriction of the parties' contractual options, but on the parties' intent and the powers of the arbitrators *as defined in the agreement*. These factors support the enforcement of agreements for an expanded scope of review. If the parties constrain the arbitrators' authority by requiring a dispute to be decided according to the rule of law, *and* make plain their intention that the award is reviewable for legal error, the general rule of limited review has been displaced by the parties' agreement. Their expectation is not that the result of the arbitration will be final and conclusive, but rather that it will be reviewed on the merits at the request of either party. That expectation has a foundation in the statutes governing judicial review, which include the ground that '[t]he arbitrators exceeded their powers.' (§§ 1286.2, subd. (a)(4), 1286.6, subd. (b).)

"We have consistently recognized that '[a]n exception to the general rule assigning broad powers to the arbitrators arises when the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers. . . . "The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. . . ." . . .' . . . Our review in *Moncharsh* of the CAA's legislative history confirms that while the statutory grounds for correction and vacation of arbitration awards do not

ordinarily include errors of law, contractual limitations on the arbitrators' powers can alter the usual scope of review." (*DIRECTV, supra*, 44 Cal.4th at pp. 1355–1356, first and second italics added, citations omitted.)

■ "[T]o take themselves out of the general rule that the merits of the award are not subject to judicial review, the parties must clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts. Here, the parties expressly so agreed, depriving the arbitrators of the power to commit legal error. They also specifically provided for judicial review of such error. We do not decide here whether one or the other of these clauses alone, or some different formulation, would be sufficient to confer an expanded scope of review. However, we emphasize that parties seeking to allow judicial review of the merits, and to avoid an additional dispute over the scope of review, would be well advised to provide for that review explicitly and unambiguously." (*DIRECTV, supra*, 44 Cal.4th at p. 1361, fn. omitted.)

In this case, the Brokers contend that the arbitration provision falls within *DIRECTV*'s exception to *Moncharsh*'s general rule of nonreviewability. We disagree.

The Brokers argue that *Moncharsh* rests on the assumption that an arbitrator is not required to apply any rules of law but is permitted to apply broad principles of justice and equity. (See *Moncharsh, supra*, 3 Cal.4th at pp. 10–11.) In contrast, the Agreement's arbitration provision required the arbitrator to render an award in accordance with California substantive law. Further, *Moncharsh* observed that an arbitration award may be " ' "reached by paths neither marked nor traceable" ' " (*id.* at p. 11), suggesting that an award, by reason of brevity, might not be reviewable as a practical matter. Here, the arbitrator was required by ADR Services's rules to issue "a written, reasoned award enumerating the disposition of each claim and the relief, if any, as to each claim." Thus, so the argument goes, *Moncharsh* and its general rule of nonreviewability do not apply in this case. But the Brokers ignore another reason for the general rule: The parties may have agreed, as evidenced by the language of the arbitration provision, to forgo expanded review. The general rule "vindicates the intentions of the parties that the award be final." (3 Cal.4th at p. 11.) And "an arbitration decision is final and conclusive *because the parties have agreed that it be so.*" (*Id.* at p. 10, original italics.) We must therefore interpret the pertinent language of the Agreement to determine the parties' intent.

■ "The interpretation of an arbitration provision 'is solely a judicial function unless it turns upon the credibility of extrinsic evidence; accordingly, an appellate court is not bound by a trial court's construction of a contract based solely upon the terms of the instrument without the aid of evidence.' . . . [¶] ' "The court should attempt to give effect to the parties'

intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made." . . .' " (*Gravillis I, supra*, 143 Cal.App.4th at p. 771.)

The Agreement's arbitration provision states in part: "BY INITIALING IN THE SPACE BELOW *YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO* DISCOVERY AND *APPEAL*, UNLESS THOSE RIGHTS ARE SPE-CIFICALLY INCLUDED IN THE **'ARBITRATION OF DISPUTES' PROVISION**." (Italics & boldface added.) The "Arbitration of Disputes" provision, in turn, makes no mention of a right to appeal and mandates that "the arbitration . . . be *conducted* in accordance with *Part III, Title 9* of the California Code of Civil Procedure." (Italics added.) Title 9 contains the CAA in its entirety. Although title 9 does *not* have a "Part III," it does have a "Chapter 3," entitled, "Conduct of Arbitration Proceedings." Nothing in that chapter addresses judicial review of arbitration awards. Rather, the provisions concerning judicial review are found in chapters 4 and 5. Consequently, the language in the Agreement giving up the right to appeal and the Agreement's silence as to the scope of review indicate that the parties intended the general rule of nonreviewability to apply.

The Brokers counter that the arbitration provision in *DIRECTV*, like the provision here, stated that California substantive law would govern the arbitrator's decision. (See *DIRECTV, supra*, 44 Cal.4th at p. 1341, fn. 3.) But in *DIRECTV*, the court held: "If the parties constrain the arbitrators' authority by requiring a dispute to be decided according to the rule of law, *and* make plain their intention that the award is reviewable for legal error, the general rule of limited review has been displaced by the parties' agreement." (*Id.* at p. 1355, original italics.) The court left open whether an expanded scope of review would apply if the arbitration provision stated only that the arbitrator lacked the power to commit legal error *or* only that the arbitration award may be judicially reviewed for errors of law. (*Id.* at p. 1361.) It emphasized that parties seeking to provide for review on the merits should do so explicitly and unambiguously but declined to provide any precise language to accomplish that goal. (*Ibid.*) In that respect, a leading treatise has recommended the use of the following provision: " 'The arbitrators shall prepare in writing and provide to the parties an award including factual findings and the reasons on which their decision is based. The arbitrators shall not have the power to commit errors of law or legal reasoning. The award is subject to review for legal error, confirmation, correction or vacatur *only* in a California state court of competent jurisdiction and only pursuant to the California Arbitration Act.' " (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2009) ¶ 5:456.9, p. 5-319 (rev. # 1, 2009); see also *id.*, appen. D, form 61, at pp. APP.D-92 to APP.D-93 (rev. # 1, 2008) [sample provision for expanded scope of review].)

■ We conclude that the parties in this case did not agree to an expanded scope of review by merely requiring the arbitrator to render an award in accordance with California substantive law. Expanded review is a marked departure from " 'arbitration as a speedy and relatively inexpensive means of dispute resolution' " (*Moncharsh, supra,* 3 Cal.4th at p. 9) and will not be implicitly attributed to the parties. The general rule of nonreviewability therefore applied to the Brokers' petition to vacate the award. (See *DIRECTV, supra,* 44 Cal.4th at pp. 1360–1361.) And "[a]rbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact[.] [A]wards may not ordinarily be vacated because of such error, for ' "[t]he arbitrator's resolution of these issues is what the parties bargained for . . . ." ' " (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 [77 Cal.Rptr.3d 613, 184 P.3d 739].)

In *Christensen v. Smith* (2009) 171 Cal.App.4th 931 [90 Cal.Rptr.3d 57], the Fourth District Court of Appeal concluded that an expanded scope of review did not apply where an arbitration provision required the arbitrator to " 'render an award *in accordance with* . . . California Law.' " (*Id.* at p. 937, some italics omitted.) As the court explained: "[The] language [of the provision] provides no hint the parties contemplated appellate review of the merits. True, the final clause specifies 'substantive California Law' is to govern the arbitration, but the language and its context, a standard form real estate contract, suggest a routine identification of forum law. . . . The language here . . . simply does not convey that the parties resolved to contravene the 'general rule' of arbitral finality . . . by subjecting each other to the time and expense of further court proceedings and the arbitrator to appellate policing.

"Unlike the arbitration agreement in [*DIRECTV*], the terms here do not expressly deprive the arbitrator of the power to commit legal error. . . . 'A provision requiring arbitrators to apply the law leaves open the possibility that they are empowered to apply it "wrongly as well as rightly." ' . . . [*DIRECTV*] cautioned parties to '*expressly* provide for an expanded scope of review' to distinguish their agreement from 'the usual expectations of parties to arbitration agreements, who accept the risk of legal error . . . .' . . . Because the parties did not do so, there is no basis for the expanded appellate review the [appellants] now seek.

"Additional language from the arbitration agreement provides *an independent ground* for our conclusion. The arbitration agreement specifies: 'Interpretation of this agreement to arbitrate shall be governed by the [FAA]' . . . . The FAA, unlike the [CAA,] . . . does not permit parties to contract for judicial review for legal error. . . . (See *Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576, [583–587] [170 L.Ed.2d 254, 128 S.Ct. 1396,

1403–1405] [FAA does not permit parties to expand scope of review by agreement] . . . .)" (*Christensen v. Smith, supra*, 171 Cal.App.4th at pp. 937–938, second italics added, citations omitted.)

The Brokers attempt to distinguish *Christensen*, contending that the arbitration provision in the present case is subject to the CAA while the arbitration agreement in *Christensen* was subject to the FAA. (See *Christensen v. Smith, supra*, 171 Cal.App.4th at pp. 937–938.) This is a distinction without a difference. *Christensen* relied on the application of the FAA as an *independent ground* of decision. (See *Christensen*, at pp. 937–938.) The court's reliance on the FAA was distinct from its analysis of the language of the arbitration provision. (See *Christensen*, at pp. 936–938; see also *Southern Cal. Ch. of Associated Builders etc. Com. v. California Apprenticeship Council* (1992) 4 Cal.4th 422, 431, fn. 3 [14 Cal.Rptr.2d 491, 841 P.2d 1011].)

■ Although the Brokers admit that requiring an arbitrator to "apply" California substantive law does not warrant an expanded scope of judicial review, they argue that requiring an arbitrator to render an award "in accordance with" California substantive law compels such review. But in *Christensen v. Smith, supra*, 171 Cal.App.4th 931, where the award was rendered "in accordance with" state substantive law, the court concluded that the general rule of nonreviewability applied, implicitly rejecting the Brokers' argument. (See *id.* at p. 937.) We now make it explicit: Neither "apply" nor "in accordance with," when used in an arbitration provision to identify the governing substantive law, evinces an agreement that an award be reviewed for legal error.

In short, an arbitration provision requiring the arbitrator to render an award in accordance with California substantive law does not, by itself, mandate review of the award on the merits. (See *Baize v. Eastridge Companies, LLC* (2006) 142 Cal.App.4th 293, 297, 300–301 [47 Cal.Rptr.3d 763] [concluding, prior to *DIRECTV*, that arbitration award was unreviewable on the merits despite arbitration provision "constrain[ing]" arbitrator to apply California substantive law and depriving arbitrator of "jurisdiction" to apply any other substantive law], cited with approval in *DIRECTV, supra*, 44 Cal.4th at pp. 1345, 1347, 1360.)

It follows that the trial court properly declined to review the Brokers' legal contentions that the arbitrator erred by finding they had breached a fiduciary duty and by awarding damages under the benefit-of-the-bargain rule instead of the out-of-pocket rule.

The Brokers' remaining challenge to the arbitrator's decision—concerning the award of arbitral costs to Gravillis—raises the question of whether the

"arbitrator[] exceeded [his] powers" under the CAA. (§ 1286.2, subd. (a)(4).) In that regard, the act states: "Unless the arbitration agreement otherwise provides or *the parties to the arbitration otherwise agree*, each party to the arbitration shall pay his *pro rata share* of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit." (§ 1284.2, italics added.) The Brokers point out that the Agreement does not address the allocation of the arbitrator's expenses and fees. From that, they jump to the conclusion that the parties should share those costs pro rata and the arbitrator erred in awarding costs to Gravillis. But the arbitration was conducted under the auspices of ADR Services. Rule 1 of ADR Services states: "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by ADR Services . . . under its Standard Arbitration Rules or for arbitration by ADR Services of a domestic commercial dispute without specifying particular rules." Rule 32 provides: "The expenses of witnesses for either side shall be paid by the party producing such witnesses. *All other expenses of the arbitration*, including required travel and other expenses of the arbitrator, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be *borne equally* by the parties, unless they agree otherwise or *unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties*." (Italics added.) Thus, by using ADR Services, "the parties to the arbitration otherwise agree[d]"—through the rules of that provider—to have the arbitrator allocate arbitral costs to one or more parties in an amount of the arbitrator's choosing.

▄ Last, Gravillis seeks sanctions on the ground that the Brokers have pursued a frivolous appeal. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or *delay the effect of an adverse judgment*—or when it indisputably has no merit—when *any reasonable attorney would agree that the appeal is totally and completely without merit*." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179], italics added; accord, *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 516 [77 Cal.Rptr.3d 540].) Applying that standard, we cannot say the appeal is frivolous.

In sum, we conclude that the trial court properly granted the petition to confirm the arbitration award, denied the petition to vacate the award, and entered judgment in favor of Gravillis.

## III

## DISPOSITION

The judgment is affirmed.

Rothschild, J., and Johnson, J., concurred.