[No. A127492. First Dist., Div. Four. Oct. 25, 2010.]

CITY OF RICHMOND, Plaintiff and Respondent, v.
SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1021,
Defendant and Appellant.

664

**Counsel**

Weinberg Roger & Rosenfeld, Vincent A. Harrington, Jr., and Kerianne Ruth Steele for Defendant and Appellant.

Renne Sloan Holtzman Sakai, Jeffrey Sloan and Nikki Hall for Plaintiff and Respondent.

**Opinion**

**SEPULVEDA, J.**—A city employee was terminated for alleged sexual harassment of a subordinate. The employee denied harassment and challenged his termination as lacking just cause. The dispute was submitted to arbitration, as mandated by the terms of a collective bargaining agreement between the city and the employee's union. The arbitrator ordered the employee

reinstated upon concluding that the sexual harassment charge was time-barred because the collective bargaining agreement required any disciplinary action to be implemented within six months of the city learning of the alleged misconduct, and the city did not act in time.

The city petitioned the court to vacate the award on public policy grounds, and the court did so. (Code Civ. Proc., § 1285.) The court held that the arbitrator violated public policy against sexual harassment in the workplace by relying upon the contractual limitation provision to award reinstatement "on purely procedural grounds" without a determination of whether the employee actually harassed his subordinate.

We reverse the trial court's order and remand with instructions to confirm the arbitration award. Arbitral finality is the general rule, and the public policy exception permitting courts to vacate an arbitration award arises in only limited and exceptional circumstances. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 373 [36 Cal.Rptr.2d 581, 885 P.2d 994]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 32 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*).) While there is a strong public policy against workplace harassment, the city has not established that public policy precludes arbitral enforcement of a reasonable limitation period contained in a collective bargaining agreement barring stale claims of misconduct.

## I. FACTS

Dean Vigil was employed by respondent City of Richmond (City) for 28 years, from January 1980 until June 2008, when he was terminated upon allegations of sexual harassment and dishonesty in denying the allegations. Vigil was employed as a recreational project coordinator for the City's recreation department and is a member of appellant Service Employees International Union, Local 1021 (Union). The Union represented Vigil during the internal grievance, arbitration, and trial court proceedings. The Union continues that representation on appeal where it contests the trial court's ruling vacating the arbitration ruling.

The claims of sexual harassment were formally investigated by the City in September 2007, when the City retained an attorney to conduct a factfinding investigation concerning allegations of sexual harassment made by Tamika Cooper, a program recreation leader who reported to Vigil. During the course of the investigation, allegations of sexual harassment by another one of

Vigil's subordinates, Jasmine Harris, were included in the investigation. In April 2008, the investigator concluded that Vigil engaged in the behavior the two women alleged. Later that same month, the City gave notice to Vigil that it proposed to terminate his employment and gave him an opportunity to respond to the charges of misconduct contained in the notice of adverse action. (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 206 [124 Cal.Rptr. 14, 539 P.2d 774].)

Specifically, the City charged defendant with sexual harassment of Harris and dishonesty in denying harassment of Cooper when interviewed by the investigator. The charge of sexual harassment was stated in the notice to Vigil as follows: "On or about December 5, 2007, a City employee you formerly supervised, Ms. Jasmine Harris, Recreation Leader, informed the City that you had sexually harassed her between June 2007 and August 2007 when you were her supervisor. Specifically, you spoke to Ms. Harris about her 'shape' stating that she 'has a nice body.' Additionally, you commented on her nipples and told Ms. Harris that you liked to 'please women' and 'eat pussy.' Ms. Harris reported that you made these comments on several occasions. Further, you invited Ms. Harris to accompany you to Japan and offered to take her and her daughter to Marine World. Your comments made Ms. Harris uncomfortable and caused Ms. Harris to request a transfer to another community center. An independent investigation was conducted into Ms. Harris's allegations and the investigator concluded that you did make the statements delineated above."

The charge of dishonesty was stated in the notice to Vigil as follows: "On or about October 24, 2007 and March 19, 2008, you were interviewed by an investigator, Ms. Karen Kramer, retained by the City to investigate the allegations of sexual harassment brought forth by Ms. Tamika Cooper and Ms. Jasmine Harris. You were dishonest during the investigatory interviews. Ms. Kramer concluded in her April 3, 2008 investigatory report that you were 'not honest with [her] when (you) denied sending text messages of a personal nature' and that you made 'a blatant lie about the text messages.' " The investigator had credited Cooper's claim that Vigil sent Cooper text messages saying " 'Yep, u r da 1, a sexy 1 to [*sic*],' " " 'Yeah I want u,' " and other personal messages, and rejected Vigil's assertion that he sent Cooper only work-related text messages.

The City's notice of adverse action stated that it was disciplining Vigil for his dishonesty in denying sexual harassment of Cooper, and *not* for the sexual

harassment itself, because the memorandum of understanding (MOU) between the City and the Union "states that no disciplinary action can be taken 'more than six months after the alleged inappropriate behavior has come to the attention of a management representative.' " In contrast to Cooper's claims of sexual harassment, Harris's claims were supposedly not reported to the City until December 2007, just four months before the April 2008 notice of proposed termination. The City thus proceeded on Harris's claim of sexual harassment, and relied upon Cooper's claims to show a pattern of harassing behavior and dishonesty in denying the behavior to the investigator.

At the Union's request, a hearing was held in May 2008 on the City's proposed termination of Vigil. At the hearing, Vigil disputed the charges of sexual harassment and dishonesty. The City was not persuaded and, on June 10, 2008, formally notified Vigil that he was terminated effective the following day. The Union asked that the employment grievance be referred to arbitration, as provided in the MOU, and the City agreed to arbitration.

The City states, without contradiction, that the arbitration hearing was held over the course of two days in June and July of 2009. We do not have a transcript of the arbitration hearing, only the parties' posthearing briefs and the arbitrator's decision dated October 15, 2009. The partial record we have indicates that several City employees testified at the hearing, including Vigil and Harris. Cooper did not testify.

The arbitrator concluded that the claim that Vigil sexually harassed Harris was time-barred because the City learned of the alleged misconduct in August 2007 (not in Dec. 2007 as it said) yet took no disciplinary action until April 2008, after the six-month contractual limitation period expired. The arbitrator also concluded that the claim that Vigil was dishonest in denying harassment of Cooper was unsupported by the evidence because Cooper never testified at the hearing and thus never established that there was any harassment. Based upon these conclusions, the arbitrator determined that there was no just cause for termination and ordered Vigil reinstated.

The City petitioned the trial court to vacate the arbitration award, and the Union petitioned to confirm the award. (Code Civ. Proc., § 1285.) The court vacated the award. The court found that the arbitrator violated public policy. The court noted that the arbitrator relied upon the contractual limitation provision requiring timely discipline to order reinstatement "on purely procedural grounds," without a determination of whether Vigil harassed his

subordinates, and found that "reinstatement without findings on what the employee did violates the strong public policy against . . . sexual harassment in the workplace." The Union, on behalf of Vigil, appeals.

## II. DISCUSSION

The sole question on appeal is whether the arbitration award violates public policy. The City does not challenge the arbitrator's factual determinations that the City failed to discipline Vigil within six months of learning of Harris's sexual harassment allegations and failed to support its claims of dishonesty concerning Cooper's allegations. The City's focus is on the question of whether the arbitrator violated public policy by ordering Vigil reinstated without first making an affirmative finding that Vigil did not engage in sexual harassment. Put another way, did the arbitrator violate public policy in reinstating an accused sexual harasser where the sexual harassment claim was time-barred and the truth or falsity of the claim was never adjudicated?

There is a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh, supra,* 3 Cal.4th at p. 9.) " 'Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts.' " (*Ibid.*) "Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration." (*Id.* at p. 10.) Judicial review of arbitration awards is therefore extremely limited. "[A]n arbitrator's decision is not generally reviewable for errors of fact or law . . . ."[1] (3 Cal.4th at p. 6.)

There are specified statutory grounds for vacating or correcting an arbitration award, none of which is applicable here. (Code Civ. Proc., §§ 1286.2, 1286.6.) The City tries to fit this case into the statutory framework by arguing that an arbitrator exceeds his or her powers in issuing an award that violates public policy. (Code Civ. Proc., § 1286.2, subd. (a)(4).) But excess of power and violation of public policy are more properly understood as distinct concepts. An arbitrator has exceeded his or her powers if the arbitrator "strayed beyond the scope of the parties' agreement by resolving issues the parties did not agree to arbitrate" (*Moncharsh, supra,* 3 Cal.4th at

---

[1] Parties to arbitration may expressly agree to allow for judicial review of legal error. (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1339 [82 Cal.Rptr.3d 229, 190 P.3d 586].) The arbitration provision here, reciting generally that the arbitrator "shall limit the decision to the scope, application and interpretation of the provisions of this Memorandum of Understanding and shall make no decisions in violation of existing law" is a standard arbitration provision that does not provide for such review. (*Gravillis v. Coldwell Banker Residential Brokerage Co.* (2010) 182 Cal.App.4th 503, 516–519 [106 Cal.Rptr.3d 70].)

p. 28), ordered an unauthorized remedy (*Advanced Micro Devices, Inc. v. Intel Corp., supra*, 9 Cal.4th at p. 375), or resolved nonarbitral issues (*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 275–276, 287 [52 Cal.Rptr.2d 115, 914 P.2d 193]). Public policy, on the other hand, is an exception rooted in common law and stems from a court's power to refuse enforcement of illegal contracts. (*Paperworkers v. Misco, Inc.* (1987) 484 U.S. 29, 42 [98 L.Ed.2d 286, 108 S.Ct. 364]; *Moncharsh, supra*, at pp. 28–29, 31–33.) "A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." (*Misco, supra*, 484 U.S. at p. 42.) In any event, whether an arbitration award in violation of public policy may be properly categorized as an award in excess of the arbitrator's power is largely a semantic matter that need not detain us. The key consideration for our purposes is that the public policy exception must be applied with care.

■ "[T]he normal rule of limited judicial review may not be avoided by a claim that a provision of the contract, construed or applied by the arbitrator, is 'illegal,' except in rare cases when according finality to the arbitrator's decision would be incompatible with the protection of a statutory right." (*Moncharsh, supra*, 3 Cal.4th at p. 33.) "Absent a clear expression of illegality or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." (*Id.* at p. 32.)

■ We are also conscious of the fact that the arbitration award here was issued under a collective bargaining agreement. "California has a strong public policy favoring collective bargaining agreements, or MOU's, in the public employment sector." (*Social Services Union v. Alameda County Training & Employment Bd.* (1989) 207 Cal.App.3d 1458, 1465 [255 Cal.Rptr. 746].) Accordingly, " '[i]n reviewing arbitration awards in the labor-management field, courts are more restricted in their power to vacate than in other types of arbitration.' " (*Id.* at p. 1464.)

Here, the City and the Union bargained for arbitration of disputes over employee disciplinary actions, and bargained for a limitation period providing that "[n]o disciplinary action or reprimand may be implemented more than six months after the alleged inappropriate behavior has come to the attention of a management representative." The arbitrator found that the City did not implement disciplinary action on the sexual harassment claims in the time allotted by the MOU, and the City does not challenge that factual determination. The City does challenge the arbitrator's enforcement of the contractual limitation period. The City maintains that the arbitration award violates

public policy against workplace sexual harassment by ordering reinstatement of an accused sexual harasser on procedural grounds, without an affirmative determination that Vigil was innocent of sexual harassment.

The existence of a strong public policy against sexual harassment in the workplace is indisputable. The public policy on this point is well defined and clearly expressed in state and federal law. (Gov. Code, § 12920; 42 U.S.C. § 2000e-2(a)(1); 29 C.F.R. § 1604.11(a) (2010).) The relevant question, however, is not whether there is a public policy against sexual harassment generally but whether according finality to the arbitrator's decision would be incompatible with that public policy. (*Moncharsh, supra*, 3 Cal.4th at p. 33.) The City has not established that the public policy against sexual harassment precludes a labor arbitrator from ordering an accused harasser reinstated where the accusations are time-barred under a negotiated and reasonable limitation period.

An instructive case is *City of Palo Alto v. Service Employees Internat. Union* (1999) 77 Cal.App.4th 327 [91 Cal.Rptr.2d 500]. In that case, a city employee was fired for threatening to shoot a coworker, and the arbitrator ordered the fired employee reinstated. (*Id.* at p. 330.) The trial court confirmed the arbitration award and the city appealed upon claims that reinstatement conflicted with an injunction preventing the fired employee from entering the workplace and violated public policy against workplace violence. (*Id.* at pp. 330–332.) The Sixth District Court of Appeal found that the award should be vacated because it conflicted with the injunction but rejected the claim founded on public policy. (*Id.* at pp. 333–340.) The court acknowledged that there is "an explicit public policy requiring employers to take reasonable steps to provide a safe and secure workplace" but concluded that the city "has not established that the public policy entails the obligation to automatically fire any employee who makes a threat of violence regardless of the employee's intent in uttering it and the actual risk to workplace safety and *regardless of the procedural guarantees secured by collective bargaining and set forth in a memorandum of understanding between a union and a city.* While a city might be required to summarily place an employee on administrative leave to fulfill its duty of providing a safe workplace where the city has reasonable proof that an employee has made a credible threat of violence against a coworker, *nothing permits a city to entirely ignore the grievance procedures to which it agreed* when following them does not compromise workplace safety." (*Id.* at pp. 336–337, italics added.)

Here, procedural guarantees secured by collective bargaining required the City to implement disciplinary action within six months of the alleged harassment coming to the attention of a management representative. The Union argues that the limitation period is reasonable, and observes that it is

the same length of time as the limitation period for an employee filing harassment claims with the United States Equal Employment Opportunity Commission. (42 U.S.C. § 2000e-5(e)(1).) The City makes no effort on appeal to demonstrate that the limitation period is unreasonably short. Nor did the City challenge the reasonableness of the limitation period during the administrative and arbitration proceedings. In fact, the City itself relied upon the limitation period in deciding to charge Vigil with harassment of only one of two subordinates.

As noted above, the City's notice of adverse action stated that it was disciplining Vigil for sexual harassment of Harris and dishonesty in denying sexual harassment of Cooper. The City said it was charging Vigil with dishonesty concerning Cooper, and not for sexual harassment, because the MOU between the City and the Union "states that no disciplinary action can be taken 'more than six months after the alleged inappropriate behavior has come to the attention of a management representative.' " The City proceeded with Harris's claims of sexual harassment on the supposition that those claims had not been reported to the City until December 2007, just four months before the April 2008 notice of proposed termination. But the arbitrator found that Harris's claim had actually been reported to the City in August 2007, making the claim untimely. It is the impact of that factual determination by the arbitrator, itself unassailable, that underpins this case. The City, without directly attacking the validity or reasonableness of the MOU limitation provision, nevertheless argues that the arbitrator's enforcement of the provision violates public policy because an accused sexual harasser is returned to employment on a procedural rationale alone.

■ The argument fails. There is no absolute public policy against reinstatement of persons who have engaged in sexual harassment, much less a public policy against reinstatement of persons who *may* have engaged in sexual harassment and who were ordered reinstated because the accusations were time-barred. In arguing otherwise, the City relies upon a decision issued by the Illinois Supreme Court, *American Federation of State, County and Municipal Employees, AFL-CIO v. Department of Central Management Services* (1996) 173 Ill.2d 299 [219 Ill.Dec. 501, 671 N.E.2d 668] (*AFSCME*). In that case, the court found that an arbitration award reinstating a social worker at a child protective services agency who had falsely reported that three children under her supervision were " 'doing fine,' " when in fact they had died in an accidental fire at their guardian's home, violated public policy in favor of truthful reporting by agency employees. (*Id.*, 671 N.E.2d at pp. 671–687.) The arbitrator had ordered the employee reinstated upon finding the disciplinary action to be untimely under a collective bargaining agreement requiring action " 'as soon as possible' " after " 'a reasonable period [of] time' " for investigation. (*Id.* at p. 673, italics omitted.) The

employer waited seven months after completing investigation of the misconduct before initiating disciplinary action. (*Id.* at pp. 671, 673.) The arbitrator found the employer's disciplinary action to be untimely, and ordered reinstatement on that basis. The court vacated the arbitration order upon finding a " 'well-defined and dominant' public policy against [agency] employment of individuals whose dishonesty and neglect could seriously undermine the welfare, safety, and protection of minors." (*Id.* at p. 678.) In doing so, the court addressed the contractual limitation period relied upon by the arbitrator. The court noted that "[i]n certain cases, interpreting the time provisions as the arbitrator did in this case and ordering reinstatement will not contravene the public policy . . . ." (*Ibid.*) But the court found that "the nature of the conduct at issue must be considered before arbitrary time restrictions can be imposed." (*Ibid.*) The court noted that the employee's conduct impacted the safety of children entrusted to the care of the state, and concluded that reinstatement of a social worker who falsified reports without any determination that the welfare of children would not be compromised by that reinstatement violated public policy. (*Id.* at pp. 678, 685.)

The Union here argues that "[i]t is inappropriate to import the Illinois case into California jurisprudence," because Illinois applies a broader view of the public policy exception than does California. This may be true. We need not parse the possible differences between the laws of the two states. Even if, as the Illinois court stated, "the nature of the conduct at issue must be considered before arbitrary time restrictions can be imposed" (*AFSCME, supra*, 671 N.E.2d at p. 678), we find nothing in the conduct here to preclude arbitral enforcement of the contractual limitation period.

While the harm caused by sexual harassment must never be minimized, the threat posed by an alleged harasser charged with making sexual comments and advances to coworkers is less than the threat posed by a child welfare agent who falsifies reports and imperils the physical safety of children entrusted to her care. The Illinois Supreme Court in *AFSCME* was careful to note that "[i]n certain cases, interpreting the time provisions as the arbitrator did in this case and ordering reinstatement will not contravene the public policy . . . ." (*AFSCME, supra*, 671 N.E.2d at p. 678.) Another Illinois court recognized that the *AFSCME* court's invocation of public policy to vacate an arbitration award rested on "egregious conduct" by an employee endangering public safety. (*Board of Education of City of Chicago v. Illinois Educational Labor Relations Bd.* (1997) 289 Ill.App.3d 1019 [224 Ill.Dec. 837, 682 N.E.2d 398, 400].) We are not here concerned with public safety, and thus have no occasion to decide under what circumstances public policy may preclude reinstatement of employees in safety-sensitive positions. (See *AFSCME, supra*, 671 N.E.2d at p. 678 [vacating arbitral reinstatement of child protective service agent who falsified reports]; cf. *Eastern Associated Coal Corp. v. Mine Workers* (2000) 531 U.S. 57, 65 [148 L.Ed.2d 354, 121 S.Ct. 462]

[confirming arbitral reinstatement of truckdriver who failed drug test].) It is sufficient to note that this case does not raise public safety concerns, and thus *AFSCME, supra,* at page 678 is inapplicable.

The City notes, however, that some courts have vacated arbitration awards in sexual harassment cases, where public safety was not at issue. (E.g., *Stroehmann Bakeries v. Local 776* (3d Cir. 1992) 969 F.2d 1436, 1438 (*Stroehmann*).) In *Stroehmann,* a union delivery driver was terminated for immoral conduct for sexually accosting a customer's employee. (*Id.* at pp. 1438–1440.) A labor arbitrator found no just cause for termination, and ordered reinstatement, upon concluding that the employer failed to conduct an adequate investigation of the incident before discharging the employee. (*Id.* at p. 1440.) The arbitrator declined to find whether the alleged sexual harassment occurred. (*Ibid.*) The Third Circuit held that "an award which fully reinstates an employee accused of sexual harassment without a determination that the harassment did not occur violates public policy." (*Id.* at p. 1442.) The court distinguished the situation before it, where the arbitrator never resolved the harassment allegation, with the situation where harassment is found but the arbitrator orders reinstatement and rehabilitation. (*Id.* at pp. 1442–1443.) The court held that public policy does not preclude an arbitrator from choosing a remedy short of termination for sexual harassers but does preclude an arbitrator from reinstating an accused harasser without first evaluating the truth of the harassment allegations. (*Ibid.*) The City argues that the trial court here properly followed the reasoning of *Stroehmann* in vacating the arbitration award ordering reinstatement of Vigil.

While there are differences between the facts of *Stroehmann, supra,* 969 F.2d 1436 and this case, we acknowledge that the reasoning of *Stroehmann* generally supports the City's position that arbitral reinstatement of an accused sexual harasser on procedural grounds violates public policy against workplace harassment. But we decline to follow *Stroehmann.* As an initial matter, we have reservations about the logical consistency and policy basis for a jurisprudence that confirms arbitration awards that reinstate *proven* sexual harassers, in deference to an arbitrator's power to choose remedies, but vacates arbitration awards that have used procedural grounds to reinstate *accused* sexual harassers who may or may not be guilty of misconduct. The determinative point, however, is that *Stroehmann* is inconsistent with California's law respecting arbitral finality and limiting the public policy exception to rare and exceptional circumstances. (*Moncharsh, supra,* 3 Cal.4th at p. 33.)

■ American courts differ in their application of the public policy exception. (See Grenig, Alternative Dispute Resolution (2005) § 24:19, pp. 619, 622 [case law on public policy exception to arbitral finality "is not just unsettled,

but also is conflicting and indicates further evolution in the courts"]; see generally Annot., Vacating on Public Policy Grounds Arbitration Awards Reinstating Discharged Employees—State Cases (2003) 112 A.L.R.5th 263 [collecting cases].) We are bound by principles established by our Supreme Court, which compel deference to arbitration awards and limited use of the public policy exception. (*Haworth v. Superior* Court (2010) 50 Cal.4th 372, 380 [112 Cal.Rptr.3d 853, 235 P.3d 152]; *Moncharsh, supra,* 3 Cal.4th at pp. 8–13, 32.) The public policy exception would swallow the rule of arbitral finality were courts to vacate every arbitration award that relied on procedural grounds to reinstate employees accused of sexual harassment or other publicly condemned misconduct.

We realize that according finality to the arbitrator's decision here risks returning a possible sexual harasser to the workplace. But that was a risk assumed by the City and the Union (representing both Vigil and his subordinates) in negotiating a collective bargaining agreement with provisions for private arbitration and time limitations for disciplinary actions. It is also a risk that may be greatly lessened by the City through supervision and training of its employees, and investigation and discipline of any future misconduct.

We also realize that City officials may be concerned that reinstatement of an accused sexual harasser upon an arbitrator's finding that the harassment charge was time-barred may engender lawsuits from the alleged victims asserting that the City failed to take immediate corrective action calculated to end harassment. But nothing in the arbitrator's award or findings establishes a breach of duty toward the alleged victims. An employer's actions to address harassment claims may be compliant with state and federal law yet fail to satisfy strict time limitations imposed by a collective bargaining agreement for disciplining the alleged harasser. The two matters are distinct, and nothing in our opinion should be construed as an endorsement of the Union's suggestion that the City may have violated antiharassment law by implementing disciplinary action against Vigil more than six months after learning of the harassment. The arbitrator was solely concerned with the lapse of time between revelation of the harassment in August 2007 and implementation of discipline in April 2008, and the significance of that time lapse under the MOU. The arbitrator had no occasion to evaluate the timeliness of the City's disciplinary action in light of antiharassment law nor to evaluate the City's other remedial actions, including an investigation begun in September 2007 (only a month after learning of the harassment claim) and employee reassignments to prevent exposure to a hostile work environment. The arbitrator's finding that the City was untimely in its termination of Vigil does not establish an inadequate response to claims of harassment by Harris and Cooper. It simply establishes noncompliance with the MOU and thus grounds for reinstatement.

## III. DISPOSITION

The judgment vacating the arbitration award is reversed. The case is remanded to the trial court with directions to vacate its order and to enter another order affirming the arbitration award. The parties shall bear their own costs on appeal.

Ruvolo, P. J., and Rivera, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 12, 2011, S188718.