Filed 5/1/13  Turner v. Centaurus Financial CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CAROLYN TURNER, | B237582 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS132847) |
| v. | |
| CENTAURUS FINANCIAL, INC., et al., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. James Dunn, Judge.  Reversed and remanded with directions.

Nancy Kay Undem for Plaintiff and Appellant.

Edgerton & Weaver, Elizabeth A. Lowery, K. Adam Bloom for Defendants and Respondents.

_____

Carolyn Turner appeals from an order denying her petition to vacate an arbitration award. (Code Civ. Proc., § 1285.)[1] Following de novo review, we reverse. The arbitration panel exceeded its jurisdiction and acted in a biased manner by reporting both of Turner's chosen representatives—an attorney and a securities consultant—to the State Bar, purportedly for the unauthorized practice of law. The panel's State Bar complaint, which was instigated by defense counsel, turned out to be baseless. Despite two disqualification requests from Turner, the arbitrators dismissed her claim. The arbitrators' conduct was not authorized by contract or by the controlling arbitration rules, and would cause an objective, reasonable person to doubt their impartiality.

## FACTS

Appellant Turner is an 81-year-old widow who had an investment account managed by respondent Robert Osur, a broker for respondent Centaurus Financial. When she opened the account, Turner told Osur that she needed to withdraw $3,000 per month for living expenses. Osur allegedly invested Turner's money in a variable annuity that earned him a high commission, but which failed to earn enough income, fluctuated in value, and penalized Turner every time she withdrew money.

Turner filed a statement of claim and demand for arbitration against respondents with the National Association of Securities Dealers (NASD) in June 2009.[2] She was represented by attorney Nancy Undem. Respondents answered the claim, denied the allegations of wrongdoing, and asked that Turner's claim be dismissed.

In July 2010, Undem associated securities consultant Jules Leo Federman to assist in the representation. Federman is not a lawyer. At respondents' instigation, the arbitration panel issued an order to show cause (OSC) why Federman should not be

---

[1]     Statutory references in this opinion are to the Code of Civil Procedure, unless otherwise indicated.

[2]     The NASD is now known as the Financial Industry Regulatory Authority (FINRA). (*Valentine Capital Asset Management, Inc. v. Agahi* (2009) 174 Cal.App.4th 606, 608.)

reported to the California State Bar for engaging in the unauthorized practice of law. In response to the arbitration panel's OSC, Undem withdrew, on the advice of State Bar counsel. Undem maintained that the FINRA Code of Arbitration Procedure for Customer Disputes (the FINRA Code) and state law allow parties in arbitration to be represented by non-lawyers. Undem asserted that "The panel's order deprives Mrs. Turner of her right to representation and is also grounds to vacate any subsequent award."

Federman responded to the OSC on Turner's behalf. He advised the panel that state law and FINRA rules permit parties to an arbitration to be represented by a non-attorney, and contested the panel's jurisdiction to decide the OSC. Turner asked FINRA's director of arbitration to disqualify the arbitration panel on the grounds of bias and lack of impartiality. Her request was denied.

The arbitration panel issued an order in August 2010 regarding Turner's representation. The panel rejected Undem's withdrawal as Turner's counsel because she failed to comply with State Bar rules for withdrawing from representation. It ordered Undem to attend a hearing in September to determine whether Federman could continue to represent Turner at the arbitration.

At a September hearing, the panel (with one member dissenting) decided to complain to the State Bar about Federman and Attorney Undem. The panel's letter to the State Bar reads, "We are members of the Bar and Arbitrators in the FINRA case [Turner v. Centaurus]. We are of the opinion that Jules L. Federman . . . may be engaged in the unauthorized practice of law in this case by representing the claimant. In addition, State Bar member Nancy Kay Undem may be in violation of the Rules of Professional Conduct by 'co-representing' the claimant with Mr. Federman." Turner again asked the FINRA director to disqualify the arbitration panel for exceeding their jurisdiction and displaying bias against Turner's chosen representatives. Her request was denied.

The arbitration hearing was conducted in April 2011. When the arbitrators inquired about Attorney Undem, Federman informed them that Undem was absent on the advice of State Bar counsel, because the arbitrators' misconduct complaint against her was pending. None of the arbitrators volunteered that Undem was at liberty to participate

3

because the bar had notified them that their complaint against Undem and Federman was rejected.

The panel granted respondents' motion to dismiss Turner's claim, finding that she "failed to meet her burden of proof. Respondents did not violate any FINRA (or NASD) Rule. [Turner] did not suffer any loss or damage because of Respondents' conduct. In fact, [Turner] made a substantial profit on the investment at issue." Turner, Undem and Federman were required to pay arbitration fees of $9,000, though FINRA does not authorize the arbitrators to assess session fees against party representatives. (FINRA Code, rule 12902.)

Turner filed a motion in superior court to vacate the arbitration award, citing three grounds for vacating the award: (1) the arbitrators engaged in misconduct that substantially prejudiced her rights; (2) the arbitrators were biased or prejudiced against her representatives; and (3) she was denied the right to be represented by her attorney during the hearing.

In support of the motion, Attorney Undem declared that the arbitration panel complained to the State Bar in September 2010 that Undem aided and abetted the unauthorized practice of law. This created a conflict between Undem and her client, forcing Undem to withdraw from representing Turner. After Turner's arbitration claim was dismissed, Undem learned that the arbitrators' State Bar complaint had been dismissed. (Undem was never contacted by the bar.) Although the arbitrators knew that the bar closed the case on November 3, 2010, they did not notify Undem about this development. If Undem had known that the State Bar refused to pursue the case, she would have resumed her representation of Turner.

Respondents opposed Turner's petition to vacate the award, and cross-petitioned to confirm the award. They argued that the arbitrators were accepted by Turner at the outset; Undem should have appeared at the arbitration; and Turner profited from her investment with respondents so she was not damaged. Respondents maintained that there are no grounds for vacating the award because the arbitrators engaged in no misconduct and were not subject to disqualification. They claimed that Turner expressly submitted

4

the issue of the unauthorized practice of law to the arbitration panel for resolution and, even if the arbitrators' State Bar complaint was wrongful, it did not substantially prejudice Turner's rights. Finally, respondents asserted that the arbitrators displayed no bias or prejudice against Turner's chosen representatives.

On September 28, 2011, the trial court denied Turner's petition to vacate the arbitration award. It granted respondents' cross-petition to confirm the award, but assessed the $9,000 arbitration fee solely against Turner, and not her representatives. Turner appeals from the denial of her petition.

## DISCUSSION

### 1. Request to Dismiss

Respondents ask that the appeal be summarily dismissed because Turner filed an untimely opening brief. As respondents observe, Turner was granted four extensions of time, the last of which directed her to file an opening brief by July 11, 2012, and stated that no further extensions would be granted. A fifth request for an extension was denied. On July 27, 2012, the court clerk notified counsel that if an opening brief was not filed within 15 days, the appeal would be dismissed, unless good cause was shown for relief from default. Attorney Undem applied for permission to file a late opening brief, explaining that she suffers from a medical disability. Permission was granted and the opening brief was filed on August 16, 2012.

An appellate court may relieve a party from default for failure to comply with court rules regarding the filing of briefs, upon a showing of good cause. (Cal. Rules of Court, rule 8.60(d).) "'There is [ ] a strong public policy in favor of hearing appeals on their merits and of not depriving a party of his right of appeal because of technical noncompliance where he is attempting to perfect his appeal in good faith.'" (*Brown v. Guy* (1959) 167 Cal.App.2d 211, 215.) While respondents are entitled to have the appeal proceed expeditiously, their right to have the appeal dismissed is not absolute, unless the notice of appeal is untimely. (*Ibid.*) The circumstances surrounding a default—including a medical disability—are germane when granting relief from default. (*Ibid.*) Here, Undem gave medical reasons for the delay that were accepted by this Court when it ruled

5

upon her request for permission to file a late opening brief.  We will not revisit that ruling now.  Respondents' request for dismissal is denied.

## 2.  <u>Turner's Petition to Vacate the Arbitration Award</u>

Appeal may be taken from an order dismissing a petition to vacate an arbitration award.  (§ 1294, subd. (b).)  While the merits of an award are not subject to judicial review, the Legislature permits judicial oversight where there are problems with "the fairness of the arbitration process."  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 12; *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 380 (*Haworth*).)  Review is limited to the reasons listed by statute for vacating an award.  (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1201.)  An award may be vacated if (1) it was procured by corruption, fraud or undue means; (2) the arbitrators were corrupt; (3) the rights of a party were substantially prejudiced by arbitrator misconduct; (4) the arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision; (5) a party was prejudiced by the arbitrators' refusal of a continuance or to hear material evidence "or by other conduct of the arbitrators contrary to the provisions of this title"; or (6) an arbitrator failed to disclose a ground for disqualification or was subject to disqualification but failed to do so after receiving a timely demand.  (§ 1286.2.)

A claim that the arbitrators exceeded their powers is subject to de novo review.  (*Haworth*, *supra*, 50 Cal.4th at p. 383.)  The same is true of a claim that the arbitrators were biased.  (*Id*. at pp. 384-386.)  The material fact in this case—the panel's State Bar complaint against Turner's representatives—is not in dispute.

### a.  *Jurisdiction*

Arbitrators are confined to interpretation and application of the parties' agreement: they do not sit to dispense their own brand of justice.  If the arbitrators' words manifest an infidelity to their obligation to interpret and apply the agreement, "courts have no choice but to refuse enforcement of the award."  (*Steelworkers v. Enterprise Corp.* (1960) 363 U.S. 593, 597.)  "The powers of an arbitrator derive from, and are limited by, the

6

agreement to arbitrate." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375.)

The arbitrator has "the power to decide any question of contract interpretation, historical fact or general law necessary . . . to reach a decision." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184.) Arbitrators exceed their powers if they act without statutory or contractual authority by straying beyond the scope of the parties' agreement. (*Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881, 890 (*Hoso*); *City of Richmond v. Service Employees Internat. Union, Local 1021* (2010) 189 Cal.App.4th 663, 669-670.) In respondents' words, the only issue presented to the arbitrators by this claim was whether "respondents engaged in wrongdoing in connection with an investment and [whether Turner could] recover her investment losses and other damages."

Respondents do not cite any provision of the parties' arbitration agreement giving the panel authority to report attorneys or other investor representatives to the State Bar, in an attempt to disqualify them while the arbitration proceeding is pending. Nor do respondents cite a FINRA rule allowing an arbitration panel to intermeddle in attorney disciplinary matters. On the contrary, the FINRA Code provides that "the qualifications of a person to represent a party in arbitration are governed by applicable law and may be determined by an appropriate court or other regulatory agency. In the absence of a court order, the arbitration proceeding shall not be stayed or otherwise delayed pending resolution of such issues." (FINRA Code, rule 12208(d).) The arbitration panel here did, in fact, delay proceedings while demanding briefing on Federman's and Undem's representation, without a court order. While respondents may have been entitled to complain to the State Bar about Undem and Federman, the arbitration panel lacked jurisdiction to complain on behalf of respondents.

In an apparent concession that neither the law nor the parties' arbitration agreement confer jurisdiction on the arbitrators to intermeddle in attorney disciplinary matters, respondents claim that "the unauthorized practice of law issue was expressly presented by the Parties to the Arbitrators for determination." For this proposition, they

7

cite Turner's response to the panel's OSC.  Contrary to respondents' claim, Turner's response says, "the panel *does not have jurisdiction* to decide an order to show cause" regarding the unauthorized practice of law.  (Italics added.)  Further, Undem advised the panel that if it persisted with its OSC, it would constitute "grounds to vacate any subsequent award."  It is a mystery why respondents interpret Turner's unequivocal denial of arbitrator jurisdiction to mean that the parties "expressly presented" the issue for resolution.  If Turner briefed her right to be represented by Undem and Federman— after first challenging the panel's jurisdiction—this is a justifiable attempt to defend herself and convince the arbitrators that they were wrong, not a consent to jurisdiction.

In *Hoso*, this court addressed the fairness of an arbitrator's decision to limit a party's ability to have its chosen representatives appear at the arbitration.  We wrote that nothing in state law or the arbitration rules suggests that an arbitrator can preclude a party from designating its own representatives.  (*Hoso*, *supra*, 190 Cal.App.4th at pp. 889-890.)  "By precluding appellant from having its own representative attend the arbitration, the arbitrator exceeded the authority accorded him."  (*Id.* at p. 890.)  Further, "[t]he arbitrator's conduct prejudiced appellant, as limiting appellant to [one] representative operated to deny appellant a fair hearing."  (*Id.* at p. 891.)  As in *Hoso*, the arbitration panel in this case exceeded its authority by actively working to prevent Turner's representatives from appearing on her behalf.  As we discuss below, this conduct demonstrated bias, prejudiced Turner, and prevented a fair hearing.

b. *Lack of Impartiality*

Turner argues that the arbitration panel was disqualified for lack of impartiality. When the panel issued an OSC threatening to make a complaint to the State Bar, Turner contested its jurisdiction to decide the OSC and demanded that the panel be disqualified for bias and lack of impartiality.  The request was denied.  After the panel notified the bar that Federman was engaged in the unauthorized practice of law and that Undem was participating in this violation of state law, Turner renewed her request to disqualify the panel for bias and for acting beyond its jurisdiction.  Her second request was denied.  The

8

panel ultimately ruled on the merits of Turner's claim, without the participation of Turner's attorney.

Arbitrators must recuse themselves if "'[f]or any reason . . . [a] person aware of the facts might reasonably entertain a doubt that [they] would be able to be impartial.'" (*Haworth*, *supra*, 50 Cal.4th at pp. 388-389.) "'Impartiality' entails the 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind.'" (*Id.* at p. 389.) In the context of recusal, "'[p]otential bias and prejudice must clearly be established by an objective standard.'" (*Ibid.*) "'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason.*'" (*Ibid.*)

Apart from exceeding the powers accorded to it under the arbitration agreement and the FINRA rules, the arbitration panel created doubts of its impartiality. In their letter to the State Bar, two of the three arbitrators expressed their low opinion of Turner's representatives. They wrote, "*We are of the opinion that*" Federman and Undem should be investigated or prosecuted by the State Bar. (Italics added.) The panel's opinion turned out to be baseless: the State Bar dismissed the ethics complaint. As the arbitration hearing began, the panel had the opportunity to inform Turner that its ethics complaint was rejected by the State Bar. The panel let this opportunity pass, sitting silently when it was informed that Undem had absented herself from the hearing on the advice of State Bar counsel, due to the pending bar investigation. At the time, the panel members already knew that their complaint to the bar was rejected. The panel displayed bias in favor of respondents (by pursuing a State Bar inquiry at respondents' behest) and against Turner (by failing to disclose that its State Bar complaint was rejected when it learned that Turner's attorney was absent on the advice of State Bar counsel).

The panel's conduct created an untenable conflict between Attorney Undem and her client: the attorney could not continue to act while facing the threat of suspension or

9

disbarment (not to mention criminal prosecution) as a result of representing Turner.[3] By endangering an attorney's career and livelihood—then failing to notify the attorney that the danger had passed—the panel acted in a manner that evidenced bias against a party. In effect, the panel told Undem, "We are reporting you to the State Bar because we are of the opinion that you are aiding and abetting a crime"; at the same time, the panel unreasonably demanded that Undem appear at hearings despite the obvious risk of incurring additional sanctions for continuing a purportedly illegal representation during a State Bar ethics investigation.

The panel compromised Turner's right to attorney representation at all stages of the proceedings. (§ 1282.4; FINRA Code, rule 10316.) Prejudice to Turner may be presumed from the panel's openly expressed antipathy to her chosen representatives and from its punitive assessment of $9,000 against Turner's representatives, which is not permitted by the FINRA Code.

Respondents argue that Turner cannot have the award vacated for arbitrator bias because she failed to make a recusal request to the arbitrators themselves. As a result, respondents reason, Turner's disqualification requests were procedurally defective. Under FINRA rules, a party may request that the director of FINRA "remove an arbitrator for conflict of interest or bias." (FINRA Code, rule 12407(a).) A party may also ask the arbitrators directly to recuse themselves for good cause. (FINRA Code, rule 12406.) Turner elected to follow rule 12407 by twice asking the director to disqualify the panel for bias. Her disqualification request was also served on the arbitrators themselves. There is no procedural defect.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to vacate the order confirming the arbitration award, to grant Turner's motion

---

[3] The unlawful practice of law is a crime, punishable by one year in jail or a fine. (Bus. & Prof. Code, § 6126.) The arbitrators accused Undem of aiding the commission of this crime.

10

to vacate the award, and to consider any request by the parties to take further action. Appellant is awarded her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


FERNS, J.*

_____

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.