Filed 3/30/26  Gibson, Dunn & Crutcher v. Perry CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP, | B339903 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 24STCP00203) |
| v. | |
| MARK PERRY, | |
| Defendant and Respondent. | |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Judgment affirmed; order modified in part.

Gibson, Dunn & Crutcher, James P. Fogelman, Katherine V.A. Smith, Shannon Mader and Daniel R. Adler for Defendant and Appellant.

Complex Appellate Litigation Group, Anna-Rose Mathieson, Michael von Loewenfeldt; Frankfurt Kurnit Klein & Selz, John B. Harris, Tyler Maulsby and Kristen G. Niven for Plaintiff and Respondent.

—————————————

This contract dispute concerns a law firm, Gibson, Dunn & Crutcher, LLP (Gibson Dunn), and its former partner, Mark Perry. Perry claims entitlement to retirement payments under the firm's partnership agreement. Gibson Dunn believes Perry irrevocably forfeited those payments because rather than retire, he decamped to a competitor firm.

An arbitrator, after summary disposition proceedings, sided with Perry, finding the partnership agreement entitled him to retirement payments should he stop competing with Gibson Dunn. Then the parties came to court. Perry petitioned to confirm the arbitration award and Gibson Dunn petitioned to vacate it. (See Code Civ. Proc., § 1285 et seq. (further statutory references are to the Code of Civil Procedure).) Gibson Dunn also moved to seal perceived trade secrets and irrelevancies within the confidential arbitration record it had proffered to support its petition to vacate. The trial court confirmed the arbitration award to Perry while partially granting Gibson Dunn's sealing request.

Gibson Dunn seeks reversal of the judgment confirming the award and the related grant of attorney fees to Perry. It also seeks modification of the sealing order to include several additional matters. We affirm the judgment because Gibson Dunn has not asserted the kinds of defects in the arbitration process that courts can rectify. We modify the sealing order in part.

## BACKGROUND

### A.     Relevant Provisions of the Partnership Agreement

We set forth the provisions of the partnership agreement governing the parties' dispute.  These provisions concern dissociation, retirement, and withdrawal.

The partnership agreement defines " 'disassociate' or 'dissociation' [to] mean[ ] a Partner's ceasing to be a Partner of the Partnership for any reason, including by reason of death, permanent disability, retirement or withdrawal."

Under section 6.01(a), a "Partner who attains or has attained . . . at least Age 55 may elect to become a Retired Partner on the last day of any month thereafter as designated by the Partner by written notice to the Executive Committee." Retired Partners are entitled to recover their paid-in capital within 90 days of attaining that status.  They may also receive fixed, periodic payments from the firm's pool of current profits. Section 6.02(b)(i) requires that "as a condition of the right to receive [these] payments from the Partnership, a Retired Partner . . . shall refrain from engaging in any activity or holding any position that the Executive Committee determines (and notifies the Retired Partner in writing) injures, interferes or competes or would injure, interfere or compete with the business or goodwill of the Partnership . . . ."

Section 12.01 allows a partner to "dissociate from the Partnership by notifying the Managing Partner in writing that such Partner . . . wishes to become a Withdrawn Former Partner. Such Partner . . . shall (a) cease to be a Partner, Retired Partner or Disabled Former Partner, as the case may be, and (b) become a 'Withdrawn Former Partner.' "  Section 12.01 further provides: "A dissociation from the Partnership other than in full

compliance with . . . Section 12.01 shall be a breach of this Agreement and will constitute a 'wrongful' dissociation within the meaning of § 15-602(b) of DRUPA. Notwithstanding any other provision herein, a wrongfully dissociating Partner . . . shall have no right to receive a payment of such Partner's Paid-In Capital or receive any payments with respect to the Reserve Fund." Withdrawn Former Partners are entitled to return of their paid-in capital within one year of the partner's designation as such. They are not entitled to periodic payments from the firm.

## B. Perry Leaves Gibson Dunn After Nearly 28 Years.[1]

Perry joined Gibson Dunn in September 1994 and became an equity partner effective January 1, 2000. In May 2022, Perry left the firm to join Weil, Gotshal & Manges, LLP (Weil), a Gibson Dunn competitor.

To effectuate his departure from Gibson Dunn, Perry signed and delivered a letter, on April 2, 2022, to the firm's chair and managing partner. He stated: "I have decided to resign as a partner of Gibson Dunn & Crutcher, LLP. [¶] Pursuant to Section 12.01 of the partnership agreement, I propose that my resignation be effective on Tuesday, April 5, 2022. We will be able to facilitate an orderly transition by that date. [¶] I also propose that we jointly notify certain clients of my resignation."

---

[1] The facts in this section derive largely from the arbitrator's final award, as we "may not review for sufficiency the evidence supporting an arbitrator's award" and, therefore, must "take the arbitrator's findings as correct without examining a record of the arbitration" proceedings. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367, fn. 1.)

4

On April 13, 2022, Gibson Dunn's Executive Committee, through its representative Jason Schwartz, informed Perry by email that: "The Executive Committee has authorized your withdrawal from the partnership effective EOD on May 6, 2022, pursuant to section 12.01(b)(ii) of the Partnership Agreement."

On May 3, 2022, Schwartz sent another email to Perry stating: "I am writing to notify you that, pursuant to Section 6.02(b) of the Partnership Agreement, the Executive Committee has determined that you will be engaging in an activity or holding a position that would injure, interfere, or compete with the business or goodwill of the Partnership. As a result, you will not have the right to receive retirement payments from the Partnership under Article VI of the Partnership Agreement."

In a September 7, 2022, email, Perry told Schwartz that as a Retired Partner, he should have, but had not, received the return of his paid-in capital within the applicable 90-day period. Perry also asserted that a Retired Partner has a " 'vested' " right to periodic payments. So, Perry argued, a Retired Partner should be entitled to periodic payments once he or she "is no longer competing" with Gibson Dunn.

Two days later, Gibson Dunn's counsel sent Perry an email stating that by resigning, Perry elected to become a Withdrawn Former Partner, rather than a Retired Partner. Even if Perry were a Retired Partner, the email continued, he would be ineligible to receive future periodic payments because he joined a competing firm, and a Retired Partner's right to periodic payments " 'is not restored after [he or she] ceases to work at a competing firm.' "

In a September 20, 2022, response, Perry wrote that section 12.01 of the partnership agreement required him to "resign" from

5

the firm to satisfy the requirements for disassociation. Gibson Dunn's counsel wrote back that by resigning, Perry " 'did not seek to retire or elect to retire.' "

## C.    The Arbitration

Unable to resolve these disagreements through mediation, Gibson Dunn filed a demand for arbitration with JAMS per the parties' separately executed arbitration agreement, which governs partnership agreement disputes. Gibson Dunn sought a declaratory award barring Perry from periodic payments because he: (1) is not a "Retired Partner" under the partnership agreement; and (2) had competed with the firm. Perry, in turn, sought a declaration that he was a Retired Partner and entitled to periodic payments upon ceasing competition with Gibson Dunn. He also sought prompt return of his paid-in capital.

The parties filed cross-motions for summary disposition. After a hearing, the arbitrator issued an interim award granting summary disposition in Perry's favor.

The arbitrator first found that Perry is a Retired Partner under the partnership agreement, not a Withdrawn Former Partner. The arbitrator noted Perry's April 2, 2022, letter did not "adopt the definitive Article XII nomenclature 'Withdrawn Former Partner' " and observed Gibson Dunn's May 3, 2022, email addressing Perry's ineligibility for periodic payments "effectively deems [Perry] a 'Retired Partner' by applying Article VI restrictions to [Perry's] resignation." Flowing from his status as a Retired Partner, the firm should have returned Perry's paid-in capital within 90 days but had waited over 11 months, until after the arbitration was underway. The arbitrator therefore required Gibson Dunn to pay Perry interest based on the 253-day delay.

6

Next, the arbitrator determined Perry is entitled to periodic payments should he stop competing with Gibson Dunn.  In the arbitrator's view, the partnership agreement was "unclear . . . as to whether compliance with the condition of refraining from competition [found in section 6.02] either provisionally or permanently deprives a Retired Partner of the 'right' to receive retirement payments once the Retired Partner comes into compliance."  The arbitrator resolved this ambiguity against Gibson Dunn, the drafter of the agreement, and concluded section 6.02 defers a Retired Partner's receipt of periodic payments until the Retired Partner ceases competition with Gibson Dunn.

Gibson Dunn moved for reconsideration of the interim award.  It contended the arbitrator should not have resolved the parties' dispute in Perry's favor on summary disposition.  Specifically, Gibson Dunn asserted that because the dispute's resolution turned on contested issues of fact (e.g., whether Gibson Dunn processed Perry as a Retired Partner and whether Perry intended to retire or withdraw from the firm by way of his resignation), the arbitrator was required to afford the firm a full evidentiary hearing to present further evidence supportive of its positions.

The arbitrator denied Gibson Dunn's motion for reconsideration and instead issued a final, amended award.  The final award granted Perry reasonable attorney fees, reimbursement of arbitration fees, and additional expenses.

## D.    Trial Court Proceedings

Perry petitioned to confirm the arbitrator's award while Gibson Dunn petitioned to vacate it.  (See § 1285 et seq.)  Gibson Dunn sought vacatur because the arbitrator:  (1) committed legal errors and, therefore, exceeded his powers; and (2) refused to

7

hear material evidence and to accord Gibson Dunn an evidentiary hearing. Gibson Dunn also filed a motion to seal perceived trade secrets and irrelevancies within the arbitration record it had proffered to the court.

The trial court granted Perry's petition to confirm and denied Gibson Dunn's petition to vacate. It determined the arbitration agreement did not permit judicial review of asserted legal errors and found nothing improper about the arbitrator's handling of evidentiary matters. It also partially granted the sealing motion.

The trial court accordingly entered a judgment confirming the final arbitration award and directing Gibson Dunn to pay Perry, among other things, his attorney fees through the date of the court's order on the parties' petitions.

Gibson Dunn timely appealed from both the judgment and the sealing order. On Gibson Dunn's motion, we consolidated these appeals, case Nos. B339903 and B341646, for all purposes.

## DISCUSSION

## I. Confirmation of the Award

"The scope of judicial review of arbitration awards is extremely narrow because of the strong public policy in favor of arbitration and according finality to arbitration awards." (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33.) Therefore, "an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6 (*Moncharsh*).)

The California Arbitration Act, which applies to our review of the arbitration here, "provide[s] only limited grounds for

8

judicial review of an arbitration award." (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1344 (*Cable Connection*).) As relevant, those grounds include where "[t]he arbitrator[ ] exceeded [his or her] powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted[,]" or "[t]he rights of the party were substantially prejudiced . . . by the refusal of the arbitrator[ ] to hear evidence material to the controversy . . . ." (§ 1286.2, subd. (a)(4), ¶(5).)

"We review de novo a trial court order confirming an arbitration award . . . . [Citations.] However, to the extent the trial court's decision to grant a petition to confirm or deny an arbitration award rests on its determination of disputed factual issues, we review the court's orders for substantial evidence. [Citation.] 'There is a presumption favoring the validity of the award, and appellant bears the burden of establishing [its] claim of invalidity.' " (*Valencia v. Mendoza* (2024) 103 Cal.App.5th 427, 442 (*Valencia*).)

### A. The arbitration award is not subject to vacatur based on the arbitrator exceeding his powers.

#### 1. The award is not reviewable for legal error.

Gibson Dunn contends the arbitrator exceeded his powers (§ 1286.2, subd. (a)(4)) by running afoul of California contract law. The trial court concluded it could not review the arbitral award for such legal errors. We agree with the trial court.

"[T]he statutory grounds for correction and vacation of arbitration awards do not ordinarily include errors of law," but "contractual limitations on the arbitrators' powers can alter the

9

usual scope of review." (*Cable Connection*, *supra*, 44 Cal.4th at p. 1356.) To displace the ordinary rule, "the parties must clearly agree that legal errors are an excess of arbitral authority that is reviewable by courts." (*Id.* at p. 1361.) Our Supreme Court "emphasize[s] that parties seeking to allow judicial review of the merits, and to avoid an additional dispute over the scope of review, would be well advised to provide for that review explicitly and unambiguously." (*Ibid.*)

In arguing the parties intended arbitral legal errors to face judicial review, Gibson Dunn relies on the following sentence in section 3 of the arbitration agreement: "The arbitrator's authority and jurisdiction shall be limited to determining the dispute in arbitration in conformity with law, to the same extent as if such dispute were to be determined as to liability and remedy by a court without a jury."

This language does not suffice. It simply precludes the arbitrator from resolving disputes based on an unmoored sense of justice and equity by requiring adherence to the rule of law. " '[U]nless specifically required to act in conformity with rules of law,' " as the language in the agreement here requires, arbitrators " 'may base their decision upon broad principles of justice and equity, and in so doing may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' " (*Moncharsh*, *supra*, 3 Cal.4th at pp. 10–11.) Further, "[a] provision requiring arbitrators to apply the law leaves open the possibility that they are empowered to apply it 'wrongly as well as rightly.' " (*Cable Connection*, *supra*, 44 Cal.4th at p. 1360.)

More clarity, then, is needed. The parties must "constrain the arbitrators' authority by requiring a dispute to be decided

10

according to the rule of law, *and* make plain their intention that the award is reviewable for legal error . . . ." (*Cable Connection*, *supra*, 44 Cal.4th at p. 1355.)

We agree with the trial court that the parties' arbitration agreement does not meet this second requirement. (See *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2010) 182 Cal.App.4th 503, 519 [arbitration provisions requiring an arbitrator to "apply" or render an award "in accordance with" California substantive law are insufficient on their own to mandate judicial review of an award on the merits]; see also *Christensen v. Smith* (2009) 171 Cal.App.4th 931, 936–937 [provision requiring arbitrator to " 'render an award in accordance with substantive California Law' " provided "no hint the parties contemplated appellate review of the merits" (italics omitted)]; cf. *Cable Connection*, *supra*, 44 Cal.4th at p. 1361; *id.*, fn. 20 [award was reviewable for legal error where arbitration clause stated: " 'The arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error' "].)

Accordingly, as Perry observes, this case is distinguishable from the four cases upon which Gibson Dunn relies. In each, the parties' language unquestionably evinced an intent to permit judicial review of an arbitral award for legal error. (See *Valencia*, *supra*, 103 Cal.App.5th at p. 434 [" 'The arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error. It is the explicit and unambiguous intent of the parties that any error of law or legal reasoning shall be an act in excess of the arbitrator's powers that

11

is reviewable on appeal' "]; *Samuelian v. Life Generations Healthcare, LLC* (2024) 104 Cal.App.5th 331, 349 [" 'The Arbitrator shall not have the power to commit errors of law or legal reasoning and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error' " (fn. omitted)]; *Oakland-Alameda County Coliseum Authority v. Golden State Warriors, LLC* (2020) 53 Cal.App.5th 807, 816 [" '[E]ither party may file an application to correct or vacate the arbitration award or an application for de novo review on all questions of law based on the arbitrator's finding[s] of fact' "]; *Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 530 [" 'Any party may object to the confirmation of the decision and award on the basis that the statement of facts and the conclusions of law do not support the decision and award, and/or that the law was incorrectly determined or applied, ' " and such findings and conclusions " 'shall be reviewed' " by courts " 'upon the same grounds and standards of review as' " they ordinarily employ].)

Interpreting section 3 to foreclose review of legal errors does not render that section, as Gibson Dunn argues, "a nullity." The firm contends that if section 3 does not permit such review, then it is merely a " 'choice of law provision,' " and the arbitration and partnership agreements already contain separate choice-of-law provisions. This argument misunderstands section 3's purpose and its relation to those choice-of-law provisions.

The arbitration agreement grants the arbitrator authority to resolve a wide range of disputes. It applies to "any Controversy that arises between a Partner . . . and the Partnership . . . ." "Controversy" is defined to "include any disagreement, dispute, or claim of whatever nature, including

12

tort and contract claims, claims based upon any law, statute, rule, order or regulation, claims arising out of or relating to any relationship of the parties before, at the time of entering into, during the term of, or upon or after the expiration or termination of the Partnership Agreement, and claims relating to the enforcement, interpretation or validity of the Partnership Agreement and this Arbitration Agreement."

As noted above, section 3 of the arbitration agreement constrains the arbitrator's authority by requiring adherence to the rule of law in resolving disputes. It does not identify the law the arbitrator must apply, however. The choice-of-law provisions in the arbitration agreement and the partnership agreement (i.e., section 5 of the former and section 16.03 of the latter[2]) help to fill this gap by specifying the law applicable to a given dispute. Thus, section 3 and the choice-of-law clauses work in tandem and our interpretation, and that of the trial court, do not create surplusage that would cause us to select the contrary interpretation Gibson Dunn advocates.

In sum, the parties' arbitration agreement did not displace the default rule that arbitral awards do not face judicial review for legal error. Consequently, the trial court correctly declined to review the award for such error.

---

[2] Specifically, section 5 of the arbitration agreement states it "is made under and shall be governed by and construed in accordance with the internal laws, other than as to conflict or choice of laws, of the State of California." By contrast, section 16.03 of the partnership agreement states it "is made under and shall be governed by and construed in accordance with the internal laws, other than as to conflict or choice of laws, of the State of Delaware."

13

## 2. "Irrationality" does not permit vacatur.

Apart from its argument that the arbitration agreement permits judicial review of the award for legal error, Gibson Dunn asserts the arbitrator exceeded his authority by interpreting the partnership agreement so irrationally that it amounted to an arbitrary remaking of the contract. The firm explains: "The arbitrator's ruling renders section 12.01 nonsensical. That section . . . provides a mechanism for a current partner or a 'Retired Partner' to abandon the Firm and become a 'Withdrawn Former Partner.' Yet the arbitrator concluded section 12.01 could *also* be used as a means for a current partner to become a 'Retired Partner,' rather than a 'Withdrawn Former Partner' — a proposition that finds zero support in the partnership agreement itself."

Gibson Dunn forfeited this argument by failing to raise it before the trial court in its petition to vacate. (*Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 489 ["It is well settled that the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue"].) In arguing for vacatur under section 1286.2, subdivision (a)(4), Gibson Dunn argued the arbitrator exceeded his powers by committing legal error. The firm asserted the arbitrator erroneously relied on "extrinsic evidence regarding the parties' 'course of dealing' to overrule the plain language of Section 12.01 and conclude Perry is a 'Retired Partner' despite his resignation." It also asserted as legal error the arbitrator's interpretation of section 6.02(b) of the partnership agreement regarding a Retired Partner's eligibility for retirement benefits. Gibson Dunn did not argue, as it does on appeal, that the arbitrator exceeded his authority by interpreting the partnership agreement so

14

irrationally and egregiously that it amounted to an arbitrary reformation of the contract.

Even had Gibson Dunn preserved the irrationality argument for appellate review, the argument does not persuade. First, it is not clear to what extent irrationality is an available basis for vacatur under section 1286.2, subdivision (a)(4). (*Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at p. 377, fn. 10.) Regardless, where a party asserts the arbitrator's interpretation of a contract is "so egregious that it produces a result completely outside the expectations of the parties to a contract, i.e., where the arbitration award arbitrarily remakes the contract[,]" courts entertaining this theory have applied a limited, exacting standard of review. (*Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576, 582 (*PG&E*).) Under it, if "the arbitrator's reading and application of the contract is clearly within the range of ambiguity, i.e., within the ordinary bounds of semantic permissibility, there can be no tenable claim that the contract has been arbitrarily made." (*Id.* at p. 594.)

By concluding "[n]othing under the Partnership Agreement itself compels [Perry's] characterization as a 'Withdrawn Former Partner[,]' " the arbitrator rejected Gibson Dunn's contention that a partner's reference to section 12.01 of the partnership agreement necessarily results in their designation as a Withdrawn Former Partner. Having examined section 12.01 alongside the relevant definitions set forth in the contract, we conclude that, whether or not we would agree with it, the arbitrator's interpretation of section 12.01 falls "within the ordinary bounds of semantic permissibility . . . ." (*PG&E*, *supra*, 15 Cal.App.4th at p. 594.)

15

Section 12.01 begins by stating: "Any Partner or Designated Former Partner may dissociate from the Partnership by notifying the Managing Partner in writing that such Partner or Designated Former Partner wishes to become a Withdrawn Former Partner. Such Partner or Withdrawn Former Partner shall (a) cease to be a Partner, Retired Partner or Disabled Former Partner, as the case may be and (b) become a 'Withdrawn Former Partner' . . . ." Then, after explaining when a Withdrawn Former Partner's designation becomes effective, it concludes: "A dissociation from the Partnership other than in full compliance with this Section 12.01 shall be a breach of this Agreement and will constitute a 'wrongful' dissociation within the meaning of § 15-602(b) of DRUPA. Notwithstanding any other provision herein, a wrongfully dissociating Partner (and such Partner's Estate, Beneficiaries or Designees) shall have no right to receive a payment of such Partner's Paid-In Capital or receive any payments with respect to the Reserve Fund."

Relevant to section 12.01's penultimate sentence is the partnership agreement's definition of the term "dissociation" as "a Partner's ceasing to be a Partner of the Partnership for any reason, including . . . *retirement or withdrawal*." (Italics added.) Consistent with this definition, "Partner" is defined as "a Person who has been elected a Partner . . . and who has not become a Former Partner." And a "Former Partner" is "any Retired Partner, Disabled Former Partner, Withdrawn Former Partner, or any Person who was at some time a Partner and has dissociated from the Partnership."

In light of these definitions, section 12.01 could be read as (1) describing how a partner can become a Withdrawn Former Partner; and (2) requiring partners wishing to become a Former

16

Partner — including a Retired Partner — to invoke section 12.01 to ensure compliance therewith and avoid wrongful disassociation. And under this interpretation, Perry's reference to section 12.01 in his April 2, 2022, resignation letter would not itself render him a Withdrawn Former Partner. Nor, in any event, would section 12.01 preclude the arbitrator from concluding Perry ultimately chose to become a Retired Partner under section 6.01(a) capable of fulfilling the obligations thereof "to the extent mutually agreed upon" by the parties under section 6.02(a). The award, then, did not rest on an irrational interpretation amounting to an arbitrary remaking of the partnership agreement. (*PG&E*, at p. 594.)

### 3. Conclusion

The trial court, then, correctly denied the petition to vacate the award under section 1286.2, subdivision (a)(4).

### B. The arbitration award is not subject to vacatur due to a refusal to hear evidence.

In asserting the trial court should have vacated the award under section 1286.2, subdivision (a)(5), Gibson Dunn advances two arguments. First, Gibson Dunn argues "[t]he arbitrator here refused to consider evidence presented by Gibson Dunn" in support of its summary disposition motion. Second, it contends the arbitrator failed to hear all material evidence by declining its request, on reconsideration, for an evidentiary hearing to present live witness testimony. This evidence, Gibson Dunn argues, was "relevant to the parties' understanding of Mr. Perry's status at or near the time he expressly 'resigned' [and] would have contradicted" the arbitrator's reading of Gibson Dunn's May 3, 2022, email as treating Perry as a Retired Partner. We reject Gibson Dunn's contentions.

17

Nothing in the award demonstrates the arbitrator excluded or struck any of the evidence Gibson Dunn submitted in support of its summary disposition motion. Rather, the award references the parties' extensive briefs and numerous evidentiary submissions, both prior to the interim award and on reconsideration. At most, the award suggests the arbitrator, in finding for Perry, did not rely on or mention certain portions of submitted evidence or consider that evidence in the favorable light Gibson Dunn had urged. It is well-settled, however, that even an arbitrator's "failure to *consider* evidence" is not "tantamount . . . to a refusal to *hear* evidence." (*Gonzales v. Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 63, fn. omitted; accord, *Plantations at Haywood 1, LLC v. Plantations at Haywood, LLC* (2025) 108 Cal.App.5th 803, 812.) "[S]ection 1286.2, subdivision (a)(5) does not contemplate vacation of an award merely because arbitrators refuse to consider evidence they find legally irrelevant." (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 369.) That section, moreover, " 'if not properly limited, could swallow the rule that arbitration awards are generally not reviewable on the merits.' " (*Id*. at p. 368.) Parties to arbitration thus run the risk of both uncorrectable legal and factual errors. (*Id*. at p. 367.)

All this aside, let us assume the assertedly unconsidered evidence suggests what Gibson Dunn asserts — that Perry, prior to leaving the firm, predicted to his financial advisor and others that he would, in conformity with conventional firm wisdom, need to forego retirement benefits in some fashion upon his resignation. That evidence neither contradicts nor forecloses the arbitrator's conclusion that Perry ultimately and legitimately exercised his contractual right, without prejudice to Gibson

18

Dunn, to become a Retired Partner, rather than a Withdrawn Former Partner, entitled to periodic payments should he cease competing.

Nor has Gibson Dunn demonstrated the arbitrator was required to hold an evidentiary hearing and failed to do so to the firm's prejudice. Here, the parties agreed to file summary disposition motions as permitted under JAMS Comprehensive Arbitration Rules & Procedures, Rule 18.[3] In moving for reconsideration, Gibson Dunn requested an evidentiary hearing, essentially seeking to relitigate any factual issues resolved against it in the interim award. But Gibson Dunn does not cite any JAMS rules requiring the arbitrator to hold an evidentiary hearing after resolving a dispute by way of written submissions and a summary disposition hearing. (See Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2025) ¶ 5:389.6 ["the *authority* for arbitrators to hear and decide dispositive motions is the rules of the arbitral institution agreed to by the parties"].) Gibson Dunn has not, on appeal, argued a breach of any arbitral rule.

Furthermore, the cases Gibson Dunn cites do not show entitlement to an evidentiary hearing on the procedural posture presented here. In *Royal Alliance Associates, Inc. v. Liebhaber*

---

[3] This rule states: "The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the request. The Request may be granted only if the Arbitrator determines that the requesting Party has shown that the proposed motion is likely to succeed and dispose of or narrow the issues in the case." (JAMS Comprehensive Arbitration Rules & Procedures, rule 18.)

19

(2016) 2 Cal.App.5th 1092, our colleagues in Division Four vacated an award under section 1286.2, subdivision (a)(5), where arbitrators permitted both parties to submit written evidence, but allowed only one to present oral evidence (*id.* at p. 1108), and "nonetheless relied on the absence of" the other party's oral "evidence to support their ruling" (*id.* at p. 1110). Here, however, the parties stood on equal footing, as they both sought and were permitted to seek resolution of their dispute by summary disposition.

Similarly inapposite are two federal cases that do not address or apply relevant California arbitration law. In *Lindsey v. Travelers Commer. Ins. Co.* (E.D. Cal. 2022) 636 F.Supp.3d 1181, the arbitrator denied an employee's motion to compel his employer to produce payroll data relevant to his racial discrimination claims and then denied the employee's summary judgment motion based on the employee's failure to carry his burden of production. (*Id.* at pp. 1185–1186.) In vacating the award under the Federal Arbitration Act (FAA), the district court concluded the arbitral proceedings were "fundamentally unfair" because "the arbitrator denied [the employee] the very evidence he later faulted [the employee] for not producing." (*Id.* at p. 1186.) The arbitrator here did nothing of the sort.

Finally, the dispute at issue in *Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas Local 901* (1st Cir. 1985) 763 F.2d 34 (*Hoteles*) concerned the propriety of a hotel lifeguard's dismissal based on allegations he exposed himself to a guest. (*Id.* at p. 36.) The employer's sole eyewitness to the incident underlying the lifeguard's dismissal appeared at an arbitration hearing to testify but then refused to do so after the arbitrator required her husband to leave the hearing room

20

during her testimony.  (*Id*. at p. 37.)  Accordingly, in lieu of the witness's live testimony, the arbitrator permitted the employer to submit the transcript of a related criminal trial, which contained the testimony of the witness and her husband relating to the incident.  (*Ibid*.)  Later, however, the arbitrator expressly gave the transcript no weight, because the written transcript foreclosed observing the eyewitness's demeanor and an assessment of credibility, and issued an award against the employer.  (*Ibid*.)

The district court vacated the award under the FAA and the Court of Appeals for the First Circuit affirmed.  (*Hoteles*, *supra*, 763 F.2d at p. 36.)  In rendering its decision, the Court of Appeals observed that "[e]very failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award."  (*Id*. at p. 40.)  On the unique facts before it, however, the court noted that because no live testimony was available, "the arbitrator's refusal to ascribe any weight to the testimony given at the criminal proceedings effectively denied the [employer] an opportunity to present any evidence in the arbitration proceeding."  (*Ibid*., italics omitted.)

The same is not true in the present case.  Gibson Dunn opted to proceed by way of summary disposition.  And so far as we can tell, the arbitrator neither limited the firm's ability to present evidence supporting its position nor stated it would ignore any of the evidence presented.

Moreover, to the extent the firm highlighted evidence it viewed as helpful to its cause when moving for reconsideration and requesting a hearing, we presume the arbitrator evaluated that offer of proof and found the firm's position, "even with the proffered evidence, lacked merit."  (*Hall v. Superior Court* (1993)

21

18 Cal.App.4th 427, 439 [reversing vacatur when arbitrator denied a motion to reopen and declined to take "actual testimony" in place of an offer of proof].)  This defeats the substantial prejudice required for vacatur.  (*Ibid.*; see generally § 1286.2, subd. (a)(5) [vacatur available only after a showing that "[t]he rights of the party were substantially prejudiced"].)  So does the firm's failure to explain on appeal how any new evidence reasonably omitted from its initial arbitration filings would have likely altered the outcome.  (See *Lake Lindero Homeowners Assn., Inc. v. Barone* (2023) 89 Cal.App.5th 834, 838, fn. 2 [an appellant bears the burden of making out a prejudicial miscarriage of justice].)

Gibson Dunn has accordingly failed to carry its burden of demonstrating the award's invalidity under section 1286.2, subdivision (a)(5).  (*Valencia*, *supra*, 103 Cal.App.5th at p. 442.)

## II.    Fee Award

Gibson Dunn's challenge to Perry's attorney fee award is premised on the arbitration award's vacatur.  As we have found the arbitration award was properly confirmed, we do not disturb the attorney fee award.

## III.    Sealing Order

Alongside its petition to vacate the arbitration award, Gibson Dunn moved to seal 72 documents, either in whole or in part.  Arguing primarily that those documents satisfied the requirements of California Rules of Court, rule 2.550 (rule 2.550), the firm also explained:  "In an abundance of caution, and to provide the Court a full view into the facts and history of the case, Gibson Dunn is submitting effectively the entire briefing record that led to the arbitral award in the underlying

22

proceeding.  Inevitably, much of this record will not be relevant to the Court's final adjudication of this dispute, and that portion of the record should be sealed as irrelevant (or struck from at [*sic*] that juncture)."

Applying rule 2.550, the trial court found four provisions of the partnership agreement and one of its attachments "to be a trade secret or other property information[,]" such that Gibson Dunn's "business may be impacted in detrimental fashion" absent a sealing order.  Thus, the court sealed all documents "specifically discussing or referencing" those partnership agreement provisions and attachments.  It also allowed the firm to redact the names of former partners, the terms of confidential settlement agreements to which those partners were parties, Perry's dividend statements, and documents pertaining to Weil. The court denied the motion as to all the other materials at issue.

On appeal, Gibson Dunn asserts that "in addition to what the trial court already sealed," it should have been permitted to file under seal "six articles of the partnership agreement, one additional provision, and portions of three other provisions," as well as "a separate agreement among Executive Committee Members," paragraph 17 of Perry's counterclaims, and all references in the trial court record to this information.  These materials, the firm argues, were irrelevant to the issues presented by its petition to vacate the arbitration award and, therefore, should have been sealed because they fell outside the purview of rule 2.550.  Perry takes no position as to these arguments.

"California Rules of Court, rules 2.550 and 2.551 (jointly, the sealed records rules) codify the principles articulated by California courts concerning the public's First Amendment right

23

of access to court records.  Rule 2.550 provides:  'Unless confidentiality is required by law, court records are presumed to be open.'  (Rule 2.550(c).)  Rule 2.550 further provides that a court may order a record sealed 'only if it expressly finds facts that establish:  [¶] (1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and  [¶] (5) No less restrictive means exist to achieve the overriding interest.  (Rule 2.550(d).) "  (*In re Marriage of Tamir* (2021) 72 Cal.App.5th 1068, 1079, fn. omitted.)

The sealed records rules apply only to "discovery materials that are used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings."  (Rule 2.550(a)(3).)  "[A]ll discovery materials submitted to a court in support of and in opposition to a pending motion" fall within rule 2.550(a)(3) "with the important caveat that irrelevant discovery materials or materials as to which evidentiary objections are sustained, are not 'submitted as a basis for adjudication' . . . ."  (*Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 492 (*Overstock*).)  This is because "[t]he public's right of access to court records exists only as to" materials that are "*relevant* to the contentions advocated by the proffering party."  (*Id.* at p. 500.)  Thus, courts have authority to order irrelevant material stricken or sealed.  (See, e.g., *id.* at pp. 506–507.)

On review of an order denying a motion to seal, we "review de novo whether the sealed records rules apply to a given set of discovery materials (a question of law).  And when they do, we

24

review the ultimately discretionary decision to deny sealing by inquiring whether substantial evidence supports the trial court's express or implied findings that the requirements for sealing are not met." (*Overstock*, *supra*, 231 Cal.App.4th at p. 492.)

Our review here begins and ends with the first part of the analytical framework set forth above. In seeking to vacate the award, Gibson Dunn did not mention, let alone rely on, the materials now at issue. Those materials, therefore, were irrelevant and fall outside the scope of the sealed records rules. (See *Overstock*, *supra*, 231 Cal.App.4th at pp. 492, 500.) Consequently, striking or sealing these materials for good cause would have been proper. (*Id.* at p. 508, italics omitted.)

We pause to acknowledge that Gibson Dunn's sealing motion framed the irrelevance argument broadly and failed to helpfully guide the trial court to the few specific materials in its own evidentiary submission that it now raises on appeal. Such tactics burden the trial court, and certainly a trial court has no affirmative obligation to review its records and purge them of irrelevancies. In this instance, however, we are confident the materials now at issue, subject to a confidential arbitration and the parties' protective order, played no adjudicative role that illuminates the courts' processes. Perry has not sought disclosure. We see little purpose in a course other than allowing sealing of the materials Gibson Dunn identifies on appeal and we shall order the trial court to modify its sealing order on remand.

## DISPOSITION

We affirm the judgment confirming the award in Perry's favor and granting Perry his reasonable attorney fees.

We modify the sealing order to the extent that it declined to seal the materials identified in Gibson Dunn's opening brief.

25

The matter is remanded to the trial court with instructions to order those documents and all references thereto stricken or sealed for good cause, and to conduct further proceedings as needed consistent with this aspect of the opinion.

In the interests of justice, Perry is awarded his costs on appeal, and Gibson Dunn shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

SCHERB. J.

We Concur:

STRATTON, P. J.

VIRAMONTES, J.

26